# NEW ORLEANS *v.* STEMPEL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 65. Argued October 25, 1899. — Decided December 4, 1899.

Section 7 of Chapter 106 of the Louisiana Statutes of 1890, after declaring "that it is made the duty of the tax assessors throughout the State to place upon the assessment list all property subject to taxation," contained the following provision: "This shall apply with equal force to any person or persons representing in this State business interests that may claim a domicil elsewhere, the intent and purpose being that no non-resident, either by himself or through any agent, shall transact business here without paying to the State a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this State are hereby declared assessable within this State, and at the business domicil of said non-resident, his agent or representative." The defendant in error who was domiciled in the city of New York was the owner of credits which were evidenced by notes largely secured by mortgages on real estate in New Orleans; and these notes and mortgages were in the city of New Orleans, in possession of an agent of the defendant in error, who collected the interest and principal as it became due and deposited the same in a bank in New Orleans to her credit. *Held,* that under the act of 1890, as interpreted by the Supreme Court of the State, this property in the hands of

the agent was subject to taxation in New Orleans, and that such taxation did not infringe any right secured by the Federal Constitution.

Conceding as matter of fact that the assessment in this case was technically in the wrong name, the error is not one that will justify equitable relief by injunction.

Under the issue presented by the pleadings no question of overvaluation was before the court.

The rule in such a case is that the Federal courts follow the construction placed upon the statute by the state courts, and in advance of such construction they should not declare property beyond the scope of the statute and exempt from taxation unless it is clear that such is the fact.

It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicil of the owner; are subject to levy and sale on execution, and to seizure and delivery under replevin; notes and mortgages are of the same nature.

THIS case came on appeal from the Circuit Court of the United States for the Eastern District of Louisiana. It is a suit brought by the appellee to restrain the collection of taxes levied upon certain personal property which she claims was exempt from taxation. The important facts are these: The plaintiff, as well as the infants whose guardian she is, and for whose benefit she brings this suit, are residents of the State of New York, in which State she has been duly appointed the guardian of their estates. The infants inherited certain property from their grandfather, a resident of Louisiana, whose estate was duly settled in the proper court of that State. By regular proceedings these infants had been adjudged his legal heirs, and she, as guardian, had been put in possession of their property thus inherited. The order of the court, in this respect, was rendered February 14, 1896, and the taxes which were sought to be restrained were those for that year. The assessment, as appears by the assessment roll, was in the name of " the estate of D. C. McCan ; " was of $15,000, " money in possession, on deposit, or in hand," and of $800,000, " money loaned on interest, all credits and all bills receivable, for money loaned or advanced, or for goods sold; and all credits of any and every description." The principal contentions of the plaintiff were: First, that included within this personal property was some $228,000 of bonds of the State of Louisiana,

taxation of which by the State or any of its municipalities was void, as impairing the obligation of a contract made by the State. Second, that the situs of the loans and credits was in New York, the place of residence of the guardian and wards, and, therefore, being loans and credits without the State of Louisiana they were not subject to taxation therein.

*Mr. F. C. Zacharie* for appellants. *Mr. J. J. McLoughlin* was on his brief.

*Mr. E. Howard McCaleb* for appellee.

Mr. Justice Brewer, after making the above statement, delivered the opinion of the court.

A preliminary question made by the plaintiff is that she had applied to have the assessment in the name of the estate of D. C. McCan stricken off on the ground that the administration of the estate had been finally closed and the property put into the possession of the heirs, which application was denied ; that, therefore, the assessment was in the wrong name and could not be sustained. We are of the opinion, however, that there was no error in the ruling of the Circuit Court in this respect, for, conceding that as a matter of fact the assessment was technically in the wrong name, the error is not one that will justify the equitable relief by injunction.

The important question is whether the property was subject to taxation. With regard to the contention that certain bonds were included in the assessment which were not subject to taxation on account of the supposed contract of the State of Louisiana, it is sufficient to say that the assessment does not purport to include any bonds. The assessment roll is prepared so as to show in separate columns the different kinds of property included in the assessment. One column is entitled "bonds of all kinds, specifying each kind and their value," and under this heading there is no mention of any property. So, while it would seem probable from the testimony as to the amount of personal property belonging to the estate that

the assessor may have in fact included the bonds, yet upon the face of the record the only assessment is of credits and money. It may be a case of overvaluation of assessable property, but under the issue presented by the pleadings that question was not before the court.

Under the circumstances disclosed by the testimony, were the money and credits subject to taxation? It appears that these credits were evidenced by notes largely secured by mortgages on real estate in New Orleans; that these notes and mortgages were in the city of New Orleans, in possession of an agent of the plaintiff, who collected the interest and principal as it became due and deposited the same in a bank in New Orleans to the credit of the plaintiff. The question, therefore, is distinctly presented whether, because the owners were domiciled in the State of New York, the moneys so deposited in a bank within the limits of the State of Louisiana, and the notes secured by mortgages situated and held as above described, were free from taxation in the latter State. Of course, there must be statutory warrant for such taxation, for if the legislature omits any property from the list of taxables the courts are not authorized to correct the omission and adjudge the omitted property to be subject to taxation. We need not extend our inquiries back of the year 1890, for in that year the legislature passed an act amending the revenue statutes of prior years, and the questions, therefore, are whether under that statute, as interpreted by the Supreme Court, these properties were subject to taxation, and, if so subjected, whether any rights secured by the Federal Constitution were thereby infringed. That act is Chapter 106 of the Statutes of 1890, (Acts La. 1890, 121).

Section 1 enumerates among the property subject to taxation "all rights, credits, bonds and securities of all kinds, promissory notes, open accounts and other obligations; all cash."

Section 7 (p. 124), after declaring "that it is made the duty of the tax assessors throughout the State to place upon the assessment list all property subject to taxation," closes with this provision:

"And this shall apply with equal force to any person or persons representing in this State business interests that may claim a domicil elsewhere, the intent and purpose being that no non-resident, either by himself or through any agent, shall transact business here without paying to the State a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this State are hereby declared assessable within this State, and at the business domicil of said non-resident, his agent or representative."

This statute came before the Supreme Court in *Liverpool &c. Insurance Co.* v. *Board of Assessors*, 44 La. Ann. 760, where the question was whether a foreign insurance company could be taxed for the amount of the premiums due from its insured living in Louisiana, and it was held that those premiums were simply credits and therefore not taxable, the court saying (page 765):

"We are dealing exclusively with the question of credits as assessed, and we hold as decided in 41 La. Ann. 645, 1015, 'that debts have their situs at the domicil of the creditor,' because debts are property and have a value, which is inseparable from the creditor, and because the State has no greater power or jurisdiction to tax debts due to non-resident creditors than it has to tax any other personal property of such non-residents which is not situated in the State."

The same proposition was affirmed in the succeeding case, *Railey* v. *Board of Assessors*, 44 La. Ann. 765, the court, however, calling attention to this distinction (page 770):

"There is no doubt of the legislative power to modify the rule of comity, *mobilia personam sequuntur*, in many respects. Movables having an actual situs in the State may be taxed there, though the owner be domiciled elsewhere. Even debts may assume such concrete form in the evidences thereof that they may be similarly subjected when such evidences are situated in the State, as in the case of bank notes, public securities, and, possibly, of negotiable promissory notes, bills of exchange or bonds.

"But as to mere ordinary debts, reduced to no such concrete

forms, they are not capable of acquiring any situs distinct from the domicil of the creditor, and no legislative power exists to change that situs so far as non-resident creditors are concerned. As said by the Supreme Court of the United States : ' To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things, in debts, belongs to the creditors to whom they are payable, and follows their domicil wherever that may be. Their debts can have no locality separate from the parties to whom they are due.' *State Tax on Foreign-held Bonds*, 15 Wall. 300."

In *Clason* v. *New Orleans*, 46 La. Ann. 1, 5, the court affirmed the same proposition in respect to a deposit in a bank to the credit of the non-resident, saying: "We cannot distinguish between the debt due to the plaintiffs by a bank as arising from a deposit to the credit of the firm in money, and that due to it from any other cause."

This decision was, however, qualified in *Bluefield Banana Company* v. *Board of Assessors*, 49 La. Ann. 43, the court there saying that the decision rested upon the special facts of that case; that there was really no general deposit, but that the local bank was simply a medium through which the funds of the non-resident kept at the place of his residence were drawn against for the purpose of making payments in Louisana, and in this latter case it was held that, where a non-resident had an agent in New Orleans who disposed of the property of his principal as it was forwarded in the course of business and deposited the proceeds thereof in bank to the credit of his principal, the sum thus deposited was subject to taxation. This is the language of the court after its reference to the *Clason* case (*supra*, page 48) :

"The case is different here. The foreign corporation had an agent here, where it received and where it sold fruit and received the price for the same. Part of the proceeds were withheld in the hands of the agents for purposes incidental to the prosecution of its business; and part deposited to the credit of the company, subject to the check of its local agent. Also for the prosecution of its business here, and for such other purposes as the company might direct it to be applied to. The company

transacted business in New Orleans precisely as did resident business men and firms. It received all the advantages to be derived from the state and city governments which residents received, and we see no reason why it should not be taxed, as claimed in this proceeding, unless there be insuperable legal objections in the way. We find a statute of the State, which by its terms brings them under the operation of state and city taxation, and we are bound to give effect to its provisions unless they be in derogation of the Constitution. The unconstitutionality of the act is not pleaded, and we, of ourselves, see no unconstitutional features in it. The rule *mobilia sequuntur personam* is a fiction of the law, not resting of itself upon any constitutional foundation, and which gives way before express laws, destroying it in any given case where constitutional requirements themselves do not stand in the way."

This was reaffirmed in *Parker, Tax Collector,* v. *Strauss & Co.,* 49 La. Ann. 1173, in which the court says (page 1175):

" The revenue act, in entire accordance with the conceded extent of the taxing power, taxes the movable property of a foreigner. We cannot hold that cash thus liable to taxation is exempted, because for convenience it is deposited in bank and checked on by the owner. It would be a strain to apply to the deposited cash the exemption from taxation accorded to debts in their ordinary significance, due to the foreign creditor."

The last case to which our attention has been called is that of *Liverpool &c. Insurance Company* v. *Board of Assessors,* 51 La. Ann. p. —; 25 S. Rep. 970. In that case the court reaffirmed its prior rulings that " a debt due to a non-resident (still in non-concrete form) has its situs at the domicil of the creditor, and not at the domicil of the debtor," and therefore is not subject to taxation by the State which is the latter's domicil. At the same time it observed, in its discussion of the question, that the law requiring debts to be assessed for taxation " was intended for all such debts as are evidenced by note or by mortgage, or that are in such other concrete form as to render it possible to subject them to taxation under the present laws. No attempt has been made since the cited decisions

were rendered to localize ' debts' or ' open accounts' such as those upon which the taxes are now claimed."

From this review of the decisions of the Supreme Court of the State it is obvious that moneys, such as those referred to, collected as interest and principal of notes, mortgages and other securities kept within the State and deposited in one of the banks of the State for use or reinvestment, are taxable under the act of 1890. They are property arising from business done in the State; they were tangible property when received by the agent of the plaintiffs, and as such subject to taxation, and their taxability was not, as the court holds, lost by their mere deposit in a bank. It is true that when deposited the moneys became the property of the bank, and for most purposes the relation of debtor and creditor arose between the bank and the depositor; yet as evidently the moneys were to be kept in the State for reinvestment or other use they remained still subject to taxation, according to the decision in 49 La. Ann. 43. With regard to the notes and mortgages, it may be conceded that there is no express decision of the Supreme Court to the effect that they were taxable under the law of 1890, yet the reasoning of that court in several cases and its declarations, although perhaps only dicta, show that clearly in its judgment they had a local situs within the State, and were by the statute of 1890 subject to taxation.

When the question is whether property is exempt from taxation, and that exemption depends alone on a true construction of a statute of the State, the Federal courts should be slow to declare an exemption in advance of any decision by the courts of the State. The rule in such a case is that the Federal courts follow the construction placed upon the statute by the state courts, and in advance of such construction they should not declare property beyond the scope of the statute and exempt from taxation unless it is clear that such is the fact. In other words, they should not release any property within the State from its liability to state taxation unless it is obvious that the statutes of the State warrant such exemption, or unless the mandates of the Federal Constitution compel it.

If we look to the decisions of other States we find the frequent ruling that when an indebtedness has taken a concrete form and become evidenced by note, bill, mortgage or other written instrument, and that written instrument evidencing the indebtedness is left within the State in the hands of an agent of the non-resident owner, to be by him used for the purposes of collection and deposit or reinvestment within the State, its taxable situs is in the State. See *Catlin* v. *Hull*, 21 Vermont, 152, in which the rule was thus announced (pages 159, 161):

" It is undoubtedly true that, by the generally acknowledged principles of public law, personal chattels follow the person of the owner, and that, upon his death, they are to be distributed according to the law of his domicil; and in general, any conveyance of chattels, good by the law of his own domicil, will' be good elsewhere. But this rule is merely a legal fiction, adopted from considerations of general convenience and policy, for the benefit of commerce and to enable persons to dispose of their property, at their decease, agreeably to their wishes, without being embarrassed by their want of knowledge in relation to the laws of the country, where the same is situated. But even this doctrine is to be received and understood with this limitation, that there is no positive law of the country, where the property is in fact, which contravenes the law of his domicil; for if there is, the law of the owner's domicil must yield to the law of the State, where the property is in fact situate."

\* \* \* \* \*

" We are not only satisfied that this method of taxation is well founded in principle and upon authority, but we think it entirely just and equitable that, if persons residing abroad bring their property and invest it in this State, for the purpose of deriving profit from its use and employment here, and thus avail themselves of the benefits and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government, which thus protects it."

In *Goldgart* v. *People*, 106 Illinois, 25, 28, the court said:

"If the owner is absent, but the credits are in fact here, in the hands of an agent, for renewal or collection, with the view of reloaning the money by the agent as a permanent business, they have a situs here for the purpose of taxation, and there is jurisdiction over the thing."

In *Wilcox* v. *Ellis*, 14 Kansas, 588, the power of the State to tax a citizen and resident of Kansas, on money due him in Illinois, evidenced by a note, which was left in Illinois for collection, was denied, the court saying, (603) after referring to the maxim, *mobilia sequuntur personam :*

"This maxim is at most only a legal fiction; and Blackstone, speaking of legal fictions, says, 'this maxim is invariably observed, that no fiction shall extend to work an injury, its proper operation being to prevent a mischief, or remedy an inconvenience that might result from the general rule of law.' 3 Blackstone Com. 43. Now as the State of Illinois and not Kansas must furnish the plaintiff with all the remedies that he may have for the enforcement of all his rights connected with said notes, debts, etc., it would seem more just, if said debt is to be taxed at all, that the State of Illinois and not Kansas should tax it, and that we should not resort to legal fictions to give the State of Kansas the right to tax it."

The same doctrine was affirmed in *Fisher* v. *Commissioners of Rush County*, 19 Kansas, 414, and again in *Blain* v. *Irby*, 25 Kansas, 499, 501, in which the court said, referring to promissory notes: "They have such an independent situs that they may be taxed where they are situated."

The decisions of the highest courts of New York, in which State these plaintiffs reside, are to the same effect. In *People* v. *Trustees*, 48 N. Y. 390, 397, the court said:

"That the furniture in the mansion and the money in the bank were, under these provisions, properly assessable to the relators is not seriously disputed. And I am unable to see why the money due upon the land contracts must not be assessed in the same way. The debts due upon these contracts are personal estate, the same as if they were due upon notes or bonds; and such personal estate may be said to exist where the obligations for payment are held. Notes, bonds and other contracts for the

payment of money have always been regarded and treated in the law as personal property. They represent the debts secured by them. They are the subject of larceny, and a transfer of them transfers the debt. If this kind of property does not exist where the obligation is held, where does it exist? It certainly does not exist where the debtor may be and follow his person. And while, for some purposes in the law, by legal fiction, it follows the person of the creditor and exists where he may be, yet it has been settled that, for the purpose of taxation, this legal fiction does not, to the full extent, apply, and that such property belonging to a non-resident creditor may be taxed in the place where the obligations are held by his agent. *Hoyt* v. *Commissioners of Taxes*, 23 N. Y. 238; *The People* v. *Gardner*, 51 Barb. 352; *Catlin* v. *Hull*, 21 Vermont, 152."

This proposition was reaffirmed in *People ex rel.* v. *Smith*, 88 N. Y. 576, in which the Court of Appeals of that State held that a resident of New York was not liable to taxation on moneys loaned in the States of Wisconsin and Minnesota on notes and mortgages, which notes and mortgages were held in those States for collection of principal and interest and reinvestment of the funds, it appearing that property so situated within the limits of those States was there subject to taxation. See also *Missouri* v. *St Louis County Court*, 47 Missouri, 594, 600; *People* v. *Home Insurance Company*, 28 California, 533; *Billinghurst* v. *Spink County*, 5 S. Dak. 84, 98; *In re Jefferson*, 35 Minn. 215; *Poppleton* v. *Yamhill County*, 18 Oregon, 377; *Redmond* v. *Commissioners*, 87 N. C. 122; *Finch* v. *York County*, 19 Nebraska, 50.

With reference to the decisions of this court it may be said that there has never been any denial of the power of a State to tax securities situated as these are, while there have been frequent recognitions of its power to separate for purposes of taxation the situs of personal property from the domicil of the owner. In *State Tax on Foreign-held Bonds*, 15 Wall. 300, it was held that while the taxing power of the State may extend to property within its territorial limits, it cannot to that which is outside those limits, and therefore that bonds issued by a railroad company, although secured by a mortgage on property

within the State, were not subject to taxation while in the possession of their owners who were non-residents, the court saying : " We are clear that the tax cannot be sustained ; that the bonds, being held by non-residents of the State, are only property in their hands, and that they are thus beyond the jurisdiction of the taxing power of the State." But in the same case, on page 323, the court declared : " It is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicil of its owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions; the former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicil of the owner ; the latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages and debts generally, has no situs independent of the domicil of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners."

This last sentence, properly construed, is not to be taken as a denial of the power of the legislature to establish an independent situs for bonds and mortgages when those properties are not in the possession of the owner, but simply that the fiction of law, so often referred to, declares their situs to be that of the domicil of the owner, a declaration which the legislature has no power to disturb when in fact they are in his possession. It was held in that case that a statute requiring the railroad company, the obligor in such bonds, to pay the state tax, and authorizing it to deduct the amount of such taxation from the interest due by the terms of the bond, was as to non-residents a law impairing the obligation of contracts. The same proposition was affirmed in *Murray* v. *Charleston*, 96 U. S. 432, where the city of Charleston attempted to tax its obligations held by non-residents of the State. In *Tappan* v. *Merchants' National Bank*, 19 Wall. 490, the ruling was that although shares of stock in national banks were in a cer-

tain sense intangible and incorporeal personal property, the law might separate them from the persons of their owners for purposes of taxation, and give them a situs of their own. See also *Pullman's Car Company* v. *Pennsylvania*, 141 U. S. 18, 22, where the question of the separation of personal property from the person of the owner for purposes of taxation was discussed at length. As also the case of *Savings Society* v. *Multnomah County*, 169 U. S. 421, 427, in which a statute of Oregon taxing the interest of a mortgagee in real estate was adjudged valid, although the owner of the mortgage was a nonresident. Nor is there anything in the case of *Kirtland* v. *Hotchkiss*, 100 U. S. 491, conflicting with these decisions. It was there held that a State might tax one of its citizens on bonds belonging to him, although such bonds were secured by mortgage on real estate situated in another State. It was assumed that the situs of such intangible property as a debt evidenced by bond was at the domicil of the owner. There was no legislation attempting to set aside that ordinary rule in respect to the matter of situs. On the contrary, the legislature of the State of Connecticut, from which the case came, plainly reaffirmed the rule, and the court in its opinion summed up the case in these words (p. 499): " Whether the State of Connecticut shall measure the contribution which persons resident within its jurisdiction shall make by way of taxes, in return for the protection it affords them, by the value of the credits, choses in action, bonds or stocks which they may own (other than such as are exempted or protected from taxation under the Constitution and laws of the United States) is a matter which concerns only the people of that State, with which the Federal Government cannot rightfully interfere."

This matter of situs may be regarded in another aspect. In the absence of statute, bills and notes are treated as choses in action and are not subject to levy and sale on execution, but by the statutes of many States they are made so subject to seizure and sale, as any tangible personal property. 1 Freeman on Executions, sec. 112; 4 Am. & Eng. E. of L. 2d ed. 282; 11 Am. & Eng. E. of L. 2d ed. 623. Among the States referred to in these authorities as having statutes warranting

such levy and sale are California, Indiana, Kentucky, New York, Tennessee, Iowa and Louisiana. *Brown* v. *Anderson*, 4 Martin, [N. S.] 416, affirmed the rightfulness of such a levy and sale. In *Fluker* v. *Bullard*, 2 La. Ann. 338, it was held that if a note was not taken into the actual possession of the sheriff a sale by him on an execution conveyed no title on the purchaser, the court saying : " In the case of *Simpson* v. *Allain* it was held that, in order to make a valid seizure of tangible property, it is necessary that the sheriff should take the property levied upon into actual possession. 7 Rob. 504. In the case of *Gobeau* v. *The New Orleans & Nashville Railroad Company*, the same doctrine is still more distinctly announced. The court there says : 'From all the different provisions of our laws above referred to, can it be controverted that, in order to have them carried into effect, the sheriff must necessarily take the property seized into his possession ? This is the essence of the seizure. It cannot exist without such possession.' 6 Rob. 348. It is clear, under these authorities, that the sheriff effected no seizure of the note in controversy, and consequently his subsequent adjudication of it conferred no title on Bailey."

The same doctrine was reaffirmed in *Stockton* v. *Stanbrough*, 3 La. Ann. 390. Now if property can have such a situs within the State as to be subject to seizure and sale on execution, it would seem to follow that the State has power to establish a like situs within the State for purposes of taxation.

It has also been held that a note may be made the subject of seizure and delivery in a replevin suit. *Graff* v. *Shannon*, 7 Iowa, 508; *Smith* v. *Eals*, 81 Iowa, 235; *Pritchard* v. *Norwood*, 155 Mass. 539.

It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicil of the owner; are subject to levy and sale on execution, and to seizure and delivery under replevin; and yet they are but promises to pay — evidences of existing indebtedness. Notes and morgtages are of the same nature; and while they may not have become so generally recognized as tangible personal property, yet they

have such a concrete form that we see no reason why a State may not declare that if found within its limits they shall be subject to taxation.

It follows from these considerations that

*The decree of the Circuit Court must be reversed and the case remanded for further proceedings.*

MR. JUSTICE HARLAN and MR. JUSTICE WHITE dissented.