## ARND, County Treasurer, v. UNION PAC. R. CO.

### (Circuit Court of Appeals, Eighth Circuit. February 16, 1903.)

### No. 1,755.

1. TAXATION—RAILROAD BRIDGE—TAXATION FOR MUNICIPAL PURPOSES UNDER
IOWA LAW.

Under the established rule of decision in Iowa, that the taxation of
property for municipal purposes which receives no benefit or protection
directly or indirectly from the municipal government, and imposes no bur-
dens upon the city, is a violation of the constitutional provision that
private property shall not be taken for public use without just compen-
sation, the eastern half of the Union Pacific Railroad Company's bridge
across the Missouri river, which is used exclusively for railroad pur-
poses, is not taxable for municipal purposes by the city of Council Bluffs,
although within the corporate limits of such city; the eastern end of
the bridge being over a mile from buildings, street improvements, water,
or lights, and being furnished neither fire nor police protection by the
city, and the land between the bridge and the settled portion of the city
being used for agriculture, and not taxable for city purposes under the
laws of the state.

In Error to the Circuit Court of the United States for the Southern
District of Iowa.

This action was brought by William Arnd, treasurer of Pottawattamie
county, Iowa, the plaintiff in error, against the Union Pacific Railroad Com-
pany, the defendant in error, to recover municipal taxes amounting to
$3,376.28, assessed in favor of the city of Council Bluffs, for its ordinary
municipal purposes, on the eastern half of the defendant's railway bridge
which spans the Missouri river between the cities of Council Bluffs, Iowa,
and Omaha, Neb. The case was tried in the lower court on the following
agreed statement of facts:

"It is hereby stipulated and agreed by and between the parties to the above-
entitled cause that the following facts are herein and hereby stipulated,
found, and agreed upon by and between the parties hereto, subject always
to objections thereto for incompetency, immateriality, and irrelevancy:

"(1) That the limits of the city of Council Bluffs, Iowa, extend on the
west to the center line of the Missouri river, between the cities of Council
Bluffs, in the state of Iowa, and Omaha, in the state of Nebraska, and that
the bridge against which the taxes in this controversy were assessed crosses
the Missouri river, and that one-half of said bridge is in the state of Iowa,
and one-half thereof in the state of Nebraska.

"(2) That the east half of said bridge is within the city limits of the city
of Council Bluffs, Iowa, and is the property of the defendant, and that said
east half of said bridge is, and was for all of the several years sued on, as-
sessed by the local city assessor of the city of Council Bluffs as real estate.

"(3) That the municipal taxes for said city of Council Bluffs, Iowa, on the
east half of said bridge, have not been paid for several years sued on, and
represented by the warrants of the county treasurer, hereto attached, marked
'Exhibit A,' and made a part of this stipulation.

"(4) That for said years the defendant has paid the county, state, and
school taxes on the east half of said bridge.

"(5) That the amount of unpaid municipal taxes and penalties on said east
half of said bridge to September 1, 1901, is $13,713.97, as represented by the
attached warrants of the county treasurer of Pottawattamie county, state of
Iowa, hereinbefore referred to, which warrants are made a part of this stipula-
tion.

"(6) That the levy and assessment of taxes on said east half of said bridge
for said years for municipal purposes was the same as the rate levied and
assessed against other property within the city limits of said city, except
upon such property within said city limits, of which there is a large amount,

as has been for all of said years specially exempted from such municipal taxes by the action of the authorities of said city and of Pottawattamie county, for the reason that it receives no benefits from a municipal point of view; the same being used for agricultural or horticultural purposes.

"(7) That the Code of the State of Iowa, Annotated, 1897, and all statutes and acts amendatory thereof, shall be and are considered as evidence in this case, without any further reference or identification, and any statute, section, or act that either party to this controversy desires to refer to, in said Code or the amendments, may be considered as proven and as in evidence in this case.

"(8) That the eastern terminus of the defendant railroad is within the limits of the city of Council Bluffs, Pottawattamie county, Iowa, and that said defendant's tracks extend to its freighthouse, near the junction of Main street and Tenth avenue, and that another line extends to the intersection of Ninth street and Broadway in said city, and that said defendant company has valuable buildings, many miles of main and side tracks, and many acres of land, within the city limits of the city of Council Bluffs, Iowa, upon all of which said buildings, tracks, and lands, which are assessed by the executive council of the state of Iowa as a part of the railroad property of said defendant company, all state, county, school, and municipal taxes have been paid for all of said years, except the water fund and gas or street lighting fund taxes upon such of said property as lies wholly without the limits of the benefit of the same.

"(It is agreed that this controversy, and the stipulation and papers herein, shall not, in any wise, shape, manner, or form, affect the claim of the plaintiff or the defense of the company in respect to the taxes for the years involved in this controversy, for water fund and gas and street lighting fund.)

"(9) That the location of said buildings, lands, and tracks are substantially as represented on Allen's Suburban Map of Council Bluffs, Iowa, published by C. R. Allen in the year 1890, which map is hereto attached, marked 'Exhibit B,' and made a part of this stipulation, and is substantially correct, and may be considered as part of the evidence in this case.

"(10) That the map or blue print hereto attached, marked 'Exhibit C,' and made a part of this stipulation, is substantially correct, and may be considered as a part of the evidence in this case.

"(11) That the city of Council Bluffs, Iowa, maintains a regular police force, fire protection, paid firemen, and is furnished with gas, water, and electric lights, and that said water mains, gas mains, and electric light wires extend as far towards said bridge as the Union Pacific Transfer Depot, but no farther. It is, however, conceded that no regular police patrol of said bridge is maintained by said city, and that said bridge is patroled by the defendant's own employés, and no fire protection is afforded to said east half of said bridge.

"(12) That said bridge is about a mile and one-half distant from the inhabited portions of the said city of Council Bluffs, eastwardly; that for a distance of a mile and one-half, in the state of Iowa, eastwardly from the eastern end of said bridge, there are no buildings, houses, or habitations; that for a distance of a mile northwardly from said eastern end of said bridge there are no habitations or buildings; that the lands under said eastern end of said bridge, and those included in an area extending for three-fourths of a mile to the north and a mile to the south of said bridge, and extending to the east one and one-half miles from the eastern end of said bridge, are used and occupied as farm lands, and solely for agricultural purposes; that the lands shown on the map as Union Pacific lands, C. R. Hannan, N. P. Dodge, and Nathan Merriam lands are, and have been for all of said years, exempted from municipal taxes.

"(13) That the portion of said lands referred to, as has been platted into city lots and blocks, and as shown by Allen's map, have never been, and are not now, used for city purposes, but are inclosed as farm lands, and used for agricultural purposes.

"(14) That the corporate authorities of the city of Council Bluffs have never laid down or improved the streets and alleys for a distance of three-fourths of a mile north from the eastern end of said bridge, and a mile and

one-half east from the eastern end of said bridge, and a mile and one-half south from the eastern end of said bridge, except Thirty-Fifth street and Ninth avenue, and that there never has been extended to said platted portions of said lands, as above referred to, the regular police protection, fire protection, and lighting usually incident to incorporated towns, and established for and enjoyed by the citizens and residents thereof.

"(15) That said bridge has been and is used solely and only for railroad purposes, and that the lands immediately east, north, and south, and extending to the distances hereinbefore stated, have been at all times, and are now, used for agricultural purposes.

"(16) That the defendant has at all times for which these taxes have been assessed, and for which suit is now brought, policed said bridge and protected it by its own servants, agents, and employés.

"(17) That the city of Council Bluffs is a city of over 25,000 inhabitants, and that Main street and Broadway are the principal streets in said city."

The following provisions of the statutes of Iowa are cited by counsel as the only ones having any application to the case:

"Sec. 616. Taxation of Lands. No lands included within said extended limits which shall not have been laid off into lots of ten acres or less, or which shall not subsequently be divided into parcels of ten acres or less by the extension of streets and alleys, and which shall also in good faith be occupied and used for agricultural or horticultural purposes, shall be taxable for any city or town purpose, except that they may be subjected to a road tax to the same extent as though they were outside of the city or town limits, which tax shall be paid into the city or town treasury."

"Sec. 1342. Real Property of Railways. Lands, lots and other real estate belonging to any railway company, not used exclusively in the operation of the several roads, and all railway bridges across the Mississippi and Missouri rivers, and grain elevators, shall be subject to assessment and taxation on the same basis as property of individuals in the several counties where situated."

Code of Iowa of 1897.

Upon the agreed statement of facts, the Circuit Court rendered a judgment for the defendant, and the plaintiff sued out this writ of error.

Emmet Tinley (S. B. Snyder and John Y. Stone, on the brief), for plaintiff in error.

John N. Baldwin, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The railroad company has paid the state, county, and school taxes assessed on the east half of the bridge, but resists the payment of the municipal taxes assessed thereon by the city of Council Bluffs, upon the ground that the bridge, though within the corporate limits of the city, is in fact in the country, and receives no benefit or protection, directly or indirectly, from the municipal government, and the city incurs no expense, directly or indirectly, on account of the same.

A long and unbroken line of decisions of the Supreme Court of Iowa establish the doctrine that private property cannot be taken for public use without just compensation, and that the taxation of property for municipal purposes, which receives no benefits or protection whatever from the municipal government, and imposes no burdens whatever upon the city, is a violation of this constitutional guaranty and is illegal. Morford v. Unger, 8 Iowa, 82; Fulton v. Davenport, 17 Iowa, 404; O'Hare v. Dubuque, 22 Iowa, 144; Bridge Co. v. Dubuque, 32 Iowa, 427; Deiman v. Ft. Madison, 30 Iowa, 542; Taylor v. City

of Waverly, 94 Iowa, 661, 63 N. W. 347. It is said these decisions relate to lands within the city limits used for agricultural purposes, and have no application to a bridge across the Missouri river within the city limits. In express terms, such a bridge is not included in these decisions, but the decisions rest on the broad constitutional guaranty against taking private property for public use without adequate compensation—a principle as applicable to a bridge like the one involved in this case as to lands. Henderson Bridge Co. v. Henderson City, 173 U. S. 592, 19 Sup. Ct. 553, 43 L. Ed. 823.

In the brief of counsel for the city it is frankly stated that the last decision of the court, which follows and affirms its previous decisions, is not, and "does not purport to be, based on any statute."

The long and unbroken line of decisions which we have cited must be accepted as conclusively settling the law of the state on this subject, and are binding on this court. New Orleans v. Stemple, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174.

Prima facie, all property within the corporate limits of a city is subject to municipal taxation, but it is a settled principle of law in that state that the corporate limits of a city may exceed its taxable limits, and that real property to which the public ways of the city do not extend, and which is beyond the reach of police protection, and receives none, and beyond the reach of fire protection, and receives none, and beyond the reach of the city lights, and receives no benefit from them, and that is, in a word, denied the enjoyment of any of the benefits and protection which commonly flow from a municipal government, cannot lawfully be taxed by that municipality for its municipal purposes. This principle, undoubtedly, does not meet with universal assent. Judge Cooley (Cooley on Taxation [2d Ed.] 157, 159) refers to and criticises unfavorably the Iowa and Kentucky cases on this subject, but the principle is recognized in guarded language by the Supreme Court of the United States in the case of Henderson Bridge Co. v. Henderson City, supra, where exemption from municipal taxation for a bridge across the Ohio river was sought on this ground under the fourteenth amendment to the Constitution of the United States. The Supreme Court, affirming the decision of the court of appeals of Kentucky in the same case, held the bridge was liable to municipal taxation because it was "within the statutory boundary of the city of Henderson, and within reach of the police protection afforded by that city for the benefit and safety of all persons and property within its limits."

Accepting the rule prescribed by the Supreme Court of the United States in the case cited, which is, in substance, that adopted by the Supreme Court of Iowa—that, in order to bring municipal taxation within the scope of the constitutional provision that private property shall not be taken for public use without just compensation, "the case should be so clearly and palpably an illegal encroachment upon private rights as to leave no doubt that such taxation, by its necessary operation, is really spoliation under the guise of exerting the power to tax" —we proceed to inquire whether, upon the agreed statement of facts, the municipal tax imposed upon this bridge falls within this rule.

From the agreed statement of facts and the annexed plat, it is ap-

parent that the city of Council Bluffs has the corporate limits of a great city, with the population and municipal improvements and agencies of a comparatively small one. Its boundaries seem to have been established in anticipation of a future growth in population which has not yet come about. The result is that there is a large scope of territory within its corporate limits, devoted to agricultural pursuits or lying vacant, which differs in no respect from ordinary farm and pasture lands in the country. Large bodies of these lands, which, under the decisions of the Supreme Court of the state, are exempted from municipal taxation, and which are not taxed for municipal purposes, lie between the railroad bridge and the populated district of the city, and it is very clear that land lying where this bridge is situated would not be subject to municipal taxation.

The bridge is used exclusively for railroad purposes. No wagon or foot bridge is connected with it, and no street or streets lead to or from the city to it. It is not within reach of the police protection of the city, and is patroled and guarded by the servants of the railroad company. It is not within reach of any of the means provided by the city for extinguishing fires, and is far beyond the limits of the lighted portion of the city. In a word, it does not receive or enjoy any benefit or protection whatever from these or other like municipal agencies and appliances provided by the city for the benefit and safety of persons and property in the populated portion of the city. The case would not be different in these respects if the bridge was situated miles outside of the city limits. Upon this state of facts, and under the decisions of the Supreme Court of the state, the bridge is not liable for the municipal taxes assessed in favor of the city.

The present decision applies to existing conditions, which may be so changed in the future that the bridge will become liable to taxation for municipal purposes.

The judgment of the Circuit Court is affirmed.