WESTERN ASSUR. CO. OF TORONTO v. HALLIDAY et al.

(Circuit Court of Appeals, Sixth Circuit.   November 3, 1903.)

No. 1,189.

1. TAXATION—POWERS OF STATES—SITUS OF PERSONAL PROPERTY.
    A state has constitutional power to provide by statute for the taxation of personal property having an actual situs within the state, regardless of the domicile of the owner, while at the same time it taxes other property not actually within the state, but whose owner resides therein.

2. SAME—OHIO STATUTE—BONDS DEPOSITED IN FOREIGN INSURANCE COMPANY.
    Rev. St. Ohio 1890–92, § 2731, which provides that "all property whether real or personal in this state, * * * and all money, credits, investments in bonds, stocks or otherwise, of persons residing in this state, shall be subject to taxation," when construed in connection with the related sections, which require the listing for taxation of property held by trustees or agents for others, includes and subjects to taxation as "personal property" every form of such property having a situs in the state, including such forms as money, credits, bonds, or stocks, whether such situs is given by reason of the residence of the owner in the state, in which case such forms of property are taxed without regard to the place of their deposit or lodgment, or whether by reason of their being "held" within the state by an agent of a nonresident owner; and under such provision municipal bonds deposited with the state superintendent of insurance by a foreign insurance company for the protection of Ohio policy holders, as required by section 3660 of the same statutes, are taxable, and, when not returned by either the company or the superintendent of insurance, may properly be listed by the auditor of the county in which they are held.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

For opinion below, see 110 Fed. 259.

J. H. Cabell, for appellant.
David Davis and E. L. Taylor, Jr., for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge.   This is a bill to restrain an alleged illegal and wrongful assessment of property owned by the complainant, a fire insurance company incorporated under the laws of the Dominion of Canada.   Under section 3660, Rev. St. Ohio 1890–92, as amended in 1894 (91 Ohio Laws, p. 40), the company, in 1895, deposited with the superintendent of insurance of the state of Ohio $100,000, par value, of Ohio municipal bonds, which have been registered under sections 2711–2720, Rev. St. Ohio 1890–92, in the name of the said superintendent.   These bonds were delivered to him at his office in Franklin county, Ohio, and were by him deposited in the safe of the State Treasurer in the same county, and have so remained on deposit until withdrawn in 1902.   The defendant Halliday, as auditor of Franklin county, Ohio, has caused these bonds to be assessed to the said complainant for the years 1895 to 1900, both inclusive.   The only object of this bill is to restrain the collection of the tax so assessed.

¶ 2. Taxation of intangible property of nonresidents, see note to Walker v. Jack, 31 C. C. A. 467.

To this bill the defendants demurred. The demurrer was sustained, and the bill dismissed.

The bonds sought to be taxed as having a situs in Ohio were deposited under section 3660, Rev. St. 1890–92, which provides that every foreign fire insurance company shall "deposit with the superintendent of insurance, for the benefit and security of the policy-holders residing in this state, a sum not less than $100,000.00 in stocks or bonds of the United States, or the state of Ohio or any municipality or county thereof, which shall not be received by the superintendent at any rate above their par value; the stock and securities so deposited may be exchanged from time to time for other like securities; so long as the company so depositing continues solvent and complies with the laws of this state, it shall be permitted by the superintendent to collect interest or dividends on such deposits." The trust is not different from that in reference to domestic life insurance companies required by Rev. St. 1890–92, §§ 3593–3595, to make a like deposit with the same official. After the rights of policy holders under the law referred to were satisfied, it was held that the bonds were subject to the claims of the company and of the makers of the securities, so deposited, against the company. Falkenbach v. Patterson, 43 Ohio St. 360, 1 N. E. 757. The trust in behalf of the policy holders is one to be administered by the superintendent, hence the bonds cannot be recovered from him by an assignee under the insolvent laws "without first showing that such company is no longer liable to any of its policy holders." State ex rel. v. Matthews, 64 Ohio St. 419, 60 N. E. 605. Subject to the claims of Ohio policy holders, bonds so deposited constitute a part of the capital of the depositing company, invested in bonds, and by the express terms of section 3660 "may be exchanged from time to time for other like securities," and, "so long as the company continues solvent, and complies with the laws of this state, it shall be permitted by the superintendent to collect interest or dividends on the deposit."

Are municipal bonds so owned by a foreign insurance company doing business in Ohio and so held on deposit subject to taxation under the laws of Ohio? That the jurisdiction of Ohio for taxing purposes does not extend to subjects outside of the state is indisputable. There must be jurisdiction of either the property taxed or of its owner. The complainant as a corporation organized under the laws of the Dominion of Canada, according to the familiar fiction of the law, can dwell only in the place of its creation. Its legal domicile is therefore the Dominion of Canada. According to another fiction of the law, having its origin mainly in the necessity of uniformity in the law of succession to or distribution of personal estates of decedents, personal property is regarded as having only the domicile of the owner. But this, like most other fictions of the law, is never permitted to stand in the face of the facts of an actual situation which requires a different policy under the law of the actual situs. It is therefore a well-recognized exception to the maxim of "mobilia sequuntur personam" that for purposes of taxation it is entirely competent for the local law to disregard the domicile of the owner, and subject to taxation all movables according to their situs. Neither has the sover-

eign taxing power been content to confine itself to the taxation of things having an actual situs within the state, for it is not an unusual spectacle to find laws which are based upon the doctrine "mobilia sequuntur personam" subjecting to taxation such property as negotiable public securities, corporate stocks, etc., which have an actual situs outside of the state, upon the ground that the owner is a resident of the state, and his domicile the situs of such obligations, while at the same time disregarding the fiction in respect to like securities actually within the state which are owned by residents of other states. This exercise of the power of taxation according to both the actual fact of the situs and according to the fiction of the domicile of the owner, though inconsistent and seemingly unjust, does not infringe the constitutional authority of the state, for in the one case it attains its end through its power over the property itself and in the other through its authority over the owner. The books are full of cases sustaining such laws, a few of which now suffice for reference. State Tax on Foreign Held Bonds, 15 Wall. 300, 21 L. Ed. 179; Grant v. Jones, 39 Ohio, 506; Walker v. Jack, 88 Fed. 576, 31 C. C. A. 462; Street Rd. Co. v. Morrow, 87 Tenn. 407, 11 S. W. 348; Judson on Taxation, §§ 393, 394; Savings Society v. Multnomah County, 169 U. S. 421, 428, 18 Sup. Ct. 392, 42 L. Ed. 803; New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; In re Blackstone's Estate, 171 N. Y. 682, 64 N. E. 1118; Blackstone v. Miller, 188 U. S. 189, 206, 23 Sup. Ct. 277, 47 L. Ed. 439; Grundy County v. Tenn. Coal Co., 94 Tenn. 296, 9 S. W. 116; People v. Insurance Co., 29 Cal. 534; State v. Board of Assessors, 47 La. Ann. 1544, 18 South. 519; Matter of Whiting, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640; Hubbard v. Brush, 61 Ohio St. 252, 55 N. E. 829. A distinction has been sometimes regarded both in legislation and judicial opinion between such intangibles as mere debts and the interest upon bonds held and owned outside the state and such securities as public bonds and other negotiable instruments. "Bonds and negotiable instruments," said Justice Holmes speaking for the court in Blackstone v. Miller, cited heretofore, "are more than mere evidence of debt. The debt is inseparable from the paper which declares and constitutes it by a tradition which comes down from more archaic conditions. Bacon v. Hooker, 177 Mass. 335, 337, 58 N. E. 1078, 83 Am. St. Rep. 279. Therefore, considering only the place of the property, it was held that bonds held out of the state could not be reached." Referring to the Foreign Bonds Case, cited above, the justice added, "The decision has been cut down to its precise point by later cases."

It is unnecessary to concern ourselves about the power of the state to subject to taxation such intangibles as mere debts, or its power to reach such tangible properties as public securities having an actual situs outside the state, for the only question arising here is as to the power of the state to subject to taxation bonds actually in the state owned by a corporation created by the laws of a foreign country which is doing business in the state by virtue of its compliance with the law requiring that it shall, as a condition, protect the contracts it shall make with residents of Ohio by the deposit of securities in the

hands of a statutory trustee. Such bonds may well be regarded as personal property, tangible rather than intangible securities, capable of having an actual situs like money or goods.

In State Tax on Foreign Held Bonds, cited above, the court stated a well-grounded distinction between municipal bonds, bank notes, and ordinary evidences of debt, such as mortgage notes or other like obligations, saying:

"It is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the state in which it may be taxed. The same thing is true of public securities, consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions. The former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner; the latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners."

In New Orleans v. Stempel, 175 U. S. 309, 322, 20 Sup. Ct. 110, 115, 44 L. Ed. 174, the court again recognized the distinction, saying:

"It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found; irrespective of the domicile of the owner; are subject to levy and sale on execution, and to seizure and delivery upon replevin; and yet they are but promises to pay—evidences of existing indebtedness. Notes and mortgages are of the same nature; and, while they may not have become so generally recognized as tangible personal property, yet they have such a concrete form that we see no reason why a state may not declare that, if found within its limits, they shall be subject to taxation."

In the still later case of Blackstone v. Miller, 188 U. S. 189, 206, 23 Sup. Ct. 277, 279, 47 L. Ed. 439, the court, speaking of State Tax on Foreign Held Bonds, said:

"There is no conflict between our views and the point decided in the case reported under the name of State Tax on Foreign Held Bonds, 15 Wall. 300, 21 L. Ed. 179. The taxation in that case was on the interest on bonds held out of the state. Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it by a tradition which comes down from more archaic conditions. Bacon v. Hooker, 177 Mass. 335–337, 58 N. E. 1078, 83 Am. St. Rep. 279. Therefore, considering only the place of the property, it was held that bonds held out of the state could not be reached. The decision has been cut down to its precise point by later cases. Savings Loan Society v. Multnomah County, 169 U. S. 421, 428, 18 Sup. Ct. 392, 42 L. Ed. 803; New Orleans v. Stempel, 175 U. S. 309, 312, 320, 20 Sup. Ct. 110, 44 L. Ed. 174."

The power to tax being thus clear, we come to the question as to whether, under existing legislation, these bonds have been properly assessed for taxation. The Constitution of Ohio, in section 2, art. 12, provides as follows:

"Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise; and also all real and personal property, according to its true value in money," and "that personal property to an amount not exceeding in value $200.00 for each individual may, by general laws, be exempt from taxation."

In pursuance of this mandate, section 2731, Rev. St. 1890-92, defines what property shall be taxable as follows:

"All property whether real or personal in this state, and whether belonging to individuals or corporations and all moneys, credits, investments in bonds, stocks, or otherwise, of persons residing in this state, shall be subject to taxation, except only such as may be expressly exempted therefrom; and such property, moneys, credits and investments shall be entered on the list of taxable property as prescribed in this title.  *  *  *"

The claim of the insurance company is, in effect, that investments in bonds and stock, although actually having a situs in Ohio, are not subject to taxation as "personal property" "in this state," under the broad language of the first clause of section 2731, and are only taxable, being an investment in bonds, when they are the bonds or stock "of persons residing therein," within the meaning of the second clause of the same section.  This amounts to a claim of exemption in favor of every form of personal property which may come under the classification of "money, credits investment in bonds, stocks, joint stock companies or otherwise," although having an actual situs in the state, unless they are the money, credits, bonds, or stock "of persons residing in this state."  In view of the constitutional requirement that laws shall be passed subjecting all real and personal property to taxation, it would seem much more rational to construe the first clause of this section as subjecting every specie of real and personal property to taxation if found "in this state," and the enumerated kinds of personal property set out in the last clause without regard to any actual situs when owned by a "person residing in this state." Such a construction would be in accord with the opinion expressed by Judge Speer in Lee v. Sturges, 46 Ohio St. 153, 159, 19 N. E. 560, 563, 2 L. R. A. 556, where that learned judge said of this very section:

"It is clear that the purpose of section 1 is to tax all investments in stocks held within this state.  This we are bound to assume, for every presumption is in favor of that construction of the law which gives effect to the requirement of the section of the Constitution referred to, and we are forced to the conclusion that the General Assembly, in enacting this law, intended, so far as the complex nature of human business affairs should make it practicable, to include within the taxing provision all property within the state," etc.

That section 2731 is not to be construed as limiting the taxability of money, credits, bonds, and stocks to such as are owned in Ohio is made plain by section 2730, which defines the term "investment in bonds or stocks," as used in section 2731, as including such investments when "held by persons residing in this state, whether for themselves or others."  But it is obvious that section 2731 is not to be construed as if it stood by itself, for, under very familiar principles of statutory interpretation, it should be read and interpreted not only in connection with section 2730, which defines the meaning of terms used in the subsequent section, but also in connection with sections 2734, 2735, 2744, and 2746, which relate to the same subject, and are part of the same title.  By section 2734 every person "of full age and sound mind" is required to list not only the personal property of which he is the owner, but "all moneys in his possession, all moneys invested, loaned or otherwise controlled by him as agent or attor-

ney, or on account of any other person or persons, company or corporation whatsoever, and all moneys deposited subject to his order, check or draft and all credits due or owing from any persons, etc., all moneys loaned on pledge or mortgage of real estate." The same section also requires that property "held in trust" shall be returned by the trustee, and property of every corporation by the president or principal accounting officer or "agent thereof." Section 2735 prescribes where persons required to list property in behalf of others shall be required to list same, requiring, among other things, that "moneys, credits and investments, except as otherwise provided shall be listed in the township, city or village in which the person to be charged with taxes thereon may reside at the time of listing thereof, if such person reside within the county where the same are listed, and if not, then in the township, city or village where the same is when listed." Section 2746 provides that "personal property of every description, moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise shall be listed in the name of the person who was the owner thereof," etc. Section 2744, among other things, provides that the president or other officer of certain corporations named therein, including insurance companies, "whether incorporated by any law of this state or not shall list for taxation  *  *  * all the personal property, which shall be held to include all such real estate as is necessary to the daily operations of the company, moneys and credits of such company or corporation within the state," etc., "in the manner following." When the several sections are read and construed together, it is obvious that the intent and purpose of the legislation is to subject to taxation every form of personal property having a situs in this state, including such forms of personal property as money, credits, bonds, and stocks, provided only that these latter are held or owned by a person residing in the state. If they are owned by a person residing in Ohio, they are subjected to taxation without regard to the place of their deposit or lodgment, but, if not owned by a person residing in the state, their taxability is made to depend upon their being "held" in the state by some one residing therein, who holds and controls same for the nonresident owner as agent or otherwise. In the one case Ohio exercises its power to tax by reason of the presence of the property within the state, and in the other by virtue of the domicile of the owner and the saying "Mobilia sequuntur personam." Indeed, this is the view which has been taken by the Supreme Court of Ohio in Grant v. Jones, 39 Ohio St. 506, and Hubbard v. Brush, 61 Ohio St. 252, 55 N. E. 829, and by this court in Walker v. Jack, 88 Fed. 576, 31 C. C. A. 462, 465. In Grant v. Jones it was sought to subject to taxation certain mortgage notes for money loaned in Ohio and secured by Ohio land mortgages. The notes were made to a peddler, who had no domicile in Ohio, but occasionally came into the state in pursuit of his advocation, who on such trips put out his accumulations in loans and collected his interest. It was plainly a case where neither the creditor nor his notes had a status in Ohio. The case involved a construction of the tax law of 1859 and its amendments. 2 Swan & C. Rev. St. p. 1438, c. 114. Sections 2731 and 2734 of the Revised Statutes do

not, as we had occasion to notice in Walker v. Jack, 88 Fed. 576, 31 C. C. A. 462, 465, substantially change that act. Referring to the holding in the case styled "State Tax on Foreign Held Bonds" by the United States Supreme Court that the situs of a debt is ordinarily the domicile of the creditor, and not that of the debtor, the Ohio court said of the Ohio act of 1859 and amendments that:

"Our statute clearly adopts that rule. Whenever the person holding such choses in action resides in Ohio, he must list for taxation such credits whether he holds them as owner, trustee, guardian, or agent. If they are held within the state in either capacity, they are within the jurisdiction of the state for purposes of taxation. If they are not so held, but are owned and held by a nonresident, they are not subject to taxation."

In Hubbard v. Brush, cited above, the case turned upon the question as to whether the "credits" of a foreign corporation doing business in Ohio were taxable in that state. The headnote, which is the authoritative part of the decision under the rule of the Ohio court, reads as follows:

"Choses in action, whether book accounts, promissory notes, or the like, of foreign corporations that are kept in this state, and arise out of the corporate business transacted here, are subject to taxation under the provisions of section 2744, Rev. St."

There, as here, the contention was made that the corporation was one created by the law of another state, and that its intangible personalty, such as book accounts, notes, etc., had no situs except that of the domicile of the corporation. Judge Bardbury, referring to this, said:

"Does that situs for all purposes adhere to the corporate residence, or may choses in action, having the relation, connection, and situation in which these were found, be held to possess such a situs in this state as will clothe the state with jurisdiction over them for taxation? The state attempts by section 2744, Rev. St., to assert and exercise such power or jurisdiction. The section, so far as it relates to this subject, reads as follows: 'Sec. 2744. The president, secretary * * * of every joint stock company, for whatever purpose they may have been created, whether incorporated by any law of his state or not, shall list for taxation * * * all the personal property, which shall be held to include * * * credits of such company or corporation within the state.' We perceive no reason for denying to the state the power asserted by this section. If men choose to resort to another state or country for authority to organize a corporation for the purpose of engaging in business in this state, or, if that was not their original purpose, choose afterwards to plant themselves herein, and in either case transact the business wholly within our borders, and enjoy the protection of our laws, it is only just and reasonable that its property should be subject to taxation herein as fully as if its organization had been effected under our own laws, and the right of taxation should not be defeated nor limited upon the ground that for some other purpose the situs of a part of its property should be regarded as being in the state or country where the corporation was organized. Where foreign corporations voluntarily bring their personal property and business into this state to avail themselves of advantages found here which they believe will enhance the probabilities that the business they intend to pursue will be profitable, they should not be heard to complain of laws which tax them as domestic corporations are taxed by the state. We hold, therefore, that the provisions of section 2744, which make it the duty of foreign corporations to list for taxation in this state their choses in action where they are held within this state and grow out of the business they conduct herein, is a valid exercise of the taxing powers vested in the state. This holding finds support in many adjudications, among them which may be cited

The People ex rel. v. The Village of Ogdensburg, 48 N. Y. 390; Redmond v. Commissioner, 87 N. C. 122; State ex rel. Taylor, Adm'r, v. St. Louis County Court, 47 Mo. 594."

That all of the company's business was conducted in Ohio, and all of its capital invested in Ohio, did not operate to make it technically a resident of Ohio, any more than it would have been such a resident if only a part of its business had been conducted in Ohio and only a part of its capital invested there. It is true that section 2744 does not in express words refer to bonds or stocks as property to be listed by the corporations referred to in that section. But the corporations included are required to return "all the personal property, which shall be held to include all such real estate as is necessary to the daily operations of the company, moneys and credits of such company or corporation within the state," etc. The descriptive words "personal property," as used in this title, include capital stock, for this is the definition found in section 2730. In Jones v. Davis, 35 Ohio St. 477, the court had under construction sections 2744 and 2746, being sections 11 and 13 of the act of May 11, 1878 (75 Ohio Laws, pp. 445, 446). One question in the case was whether or not the property which the Toledo & Wabash Elevator Company was required to list for taxation under the eleventh section of the act, now section 2744, Rev. St. 1890–92, embraced its capital stock. Upon this subject the court said:

"That it did embrace it we entertain little doubt. * * * The fund subscribed and paid in to carry out the purposes of the organization remains the capital stock of the company as fully, within the meaning of the statute, after it has been converted into property necessary for its business operations, and for which it was subscribed, as before. * * * For the purposes of taxation the capital stock is represented by whatever it is invested in. Personal property, by the express wording of the statute, is made to include the capital stock of a corporation; and the provision above referred to requires all corporations doing business in this state, except banking and others, whose taxation is specifically provided for, to list all their personal property, including in the return thereof all such real estate as is necessary to the daily operation of their business, together with their moneys and credits of every description within the state. That the Legislature intended by this description of property to embrace the capital stock of the company is too obvious to be misunderstood. No other meaning can be drawn from the language employed, and no other construction is better calculated to do justice."

The requirement, then, is to list for taxation all of the personal property of any corporation, including in the term "personal property" the "capital stock," so far as such capital stock is invested in the state.

That section 2744 did not specifically enumerate bonds or "investments in bonds" as property to be listed is made the sole ground for the contention that such kinds of property are therefore not subject to taxation when owned by a foreign corporation of the class included in this section. But if the descriptive words "personal property" generically includes such tangible property as public securities, must such bonds escape taxation under section 2744, because not specifically mentioned as property which such corporation shall list for taxation? Are we to hold that the Legislature has in this particular instance used the descriptive words "personal property" in a narrow

sense, and that it intended that no corporate property should be listed for taxation under section 2744 which consisted of bonds or like securities not comprehended under the other terms found in the section, "moneys or credits"? Did the Legislature use the words "personal property" in this section meaning to include under that designation property in which capital was invested, as ruled in Jones v. Davis, supra, and certain real estate, but to exclude so much of its "personal property" as consisted in bonds, although such bonds represent its capital stock, which it is required to list? There might be more reason for supposing the Legislature to have intended to use the term "personal property" as excluding "investments in bonds," but for the fact that this section applies exclusively to corporations whose capital stock is required to be listed only under the description of "personal property," and the further fact that in this very section the words "personal property" are defined as including certain real estate, thus giving to one sort of property a designation totally foreign to the actual fact or any proper regard for substantial, and not mere fanciful, differences. We may concede that it is competent for the lawmaking power to reconstruct terminology by defining the sense in which it uses a particular word. This power has its limits, however, for it was observed by a great judge in Payne v. Watterson, 37 Ohio St. 125, "Legislatures cannot, by improvising definitions, change the meaning of constitutional provisions." But there is another limitation, and that is this: If the Legislature means that a word of well-established legal and commercial significance shall, when used in an enactment, be given a narrower or wider or different significance from that commonly attached, care must be taken that by either context or express provision such unusual sense is indicated. We are unable to find that the words "personal property," as used in section 2744, are used in so restricted a sense as to exclude from taxation such tangible personal property as municipal securities which represent the capital stock of a foreign insurance company lodged within the state for the security of Ohio policy holders. The construction we reach is consistent with the policy of the state as indicated by the constitutional provision requiring the equal taxation of all property within its jurisdiction, and it also meets the reasonable requirement that all property within the state which receives the benefits and protection of government should share in the burdens of government. We are the more content with this conclusion when we consider that the construction contended for would apply equally to domestic insurance companies required to list their property under this same section of the statutes. Such companies are required by sections 3634, 3637, 3640, Rev. St. 1890-92, to invest their capital in certain classes of bonds. If foreign insurance companies are not required to list bonds held by them in the state, neither are such domestic companies. In such case the exemption extended to the shares in domestic companies, whose capital stock is taxed in the name of such companies, by section 2646, would be lost. Hubbard v. Brush, 61 Ohio St. 252, 55 N. E. 829. The only answer to this suggested result is that under sections 2734 and 2735 such companies might be required to list such investments. But if those sections are in any way

applicable to the returns required from domestic corporations, they are equally applicable to foreign corporations. But it is said that section 2744 does not apply to this corporation, because it is a foreign insurance company, and that the taxation of foreign insurance corporations is specifically provided for by another provision of law. This other provision which is relied upon to take foreign insurance companies without this section is that found in section 2745. But this is a provision for a tax on business, and is imposed only upon the current premium receipts in the state, less certain commissions, expenses, and dividends paid within the state. It is plainly not a property tax at all, and is such a tax as might well be imposed upon foreign companies as a condition of doing business, leaving the question of a property tax to be governed by other and general provisions of law. That this section includes both domestic and foreign insurance companies is plain. Hubbard v. Brush, 61 Ohio St. 252, 55 N. E. 829. The bonds here in question constitute that part of the capital of the complainant particularly devoted to the business conducted in Ohio, and under the principles of Hubbard v. Brush these bonds should have been listed by the company.

Bonds were deposited under a similar law with the controller of the state of New York by a foreign insurance company. The New York court, among other things, said:

"The deposit with the controller is necessarily made in connection with the business of the company; without it they can do no business. It is therefore used in the business of the company, and in fact forms its capital in this state, which is liable to its creditors, and comes within the definition of capital as defined in the Mutual Insurance Company v. Supervisors, 4 Comst. 442. These securities so deposited with the controller form the same kind of capital as that of a domestic corporation for a similar purpose, in which the capital is the security for those who deal with it. Neither is actually invested in business and used for that purpose, but form the basis on which the business is transacted and the security from the payment of claims is to be enforced." British Com. Ins. Co. v. Com. of Taxes, 18 Abb. Prac. 130; Id., 31 N. Y. 32.

In People v. Home Ins. Co., 29 Cal. 533, bonds deposited with a banking concern as trustee to hold for the protection of the policy holders in the state in a foreign insurance company required to make such deposit as a condition of doing business were held to be taxable by the state as a portion of the capital of the company employed in its business in California. To the same effect is International Life Ins. Co. v. Commissioners of Taxes, 28 Barb. 318.

The bill avers that complainant has "made all returns required of it by the laws of Ohio," etc., "but that it did not return said bonds for taxation, acting under the honest belief that they are not taxable in the state of Ohio." In this it is at fault. The bonds are taxable, and in default of such return the auditor of Franklin county was right in assessing them as wrongly omitted. Inasmuch as this company has no general office in Ohio, but conducted its business through local agents, each under direction of its home office, these bonds were properly assessed where found.

The question as to whether it was the duty of the insurance commissioner to list these bonds as property in his hands held in trust for

the complainant is a matter of no importance now. If the company was itself under obligation to list them, the commissioner had no duty in the premises. If, however, the company is not included within the provisions of section 2744, or, if included, under no duty to list such bonds because not specifically enumerated as taxable, the duty would seem to rest upon the commissioner as a trustee, within the fair meaning of section 2734 et seq. But in respect to this we express no opinion. The complainant is the beneficial owner of these bonds. No return having been made of these bonds by either the commissioner or the complainant itself, the auditor has assessed the bonds, in the county where lodged, to the complainant itself. No question of double assessment is involved. If the duty of a return was laid upon the commissioner, and an assessment had been made against him as trustee, the corporation, as ultimate beneficial owner, would have had to pay, being ultimately liable. A court of equity would not lend its aid to enjoin an assessment solely because it should technically have been made against a trustee rather than the complaining beneficiary. New Orleans v. Stempel, 175 U. S. 309, 311, 20 Sup. Ct. 110, 44 L. Ed. 174.

The decree sustaining the demurrer of the defendants and dismissing the bill must be affirmed.