## SUPREME COURT.

In the Matter of the Petition of McMAHON, as Receiver of Taxes, &c., to enforce a personal tax against FOWLER BROTHERS.

*Taxes and assessments — When non-resident firm liable to a personal tax.*

A *foreign firm*, doing business in Liverpool, England, and having a resident member in New York carrying on the business tributary to the business in Liverpool, such business being buying and receiving property, the products of other states, for sale in England and Europe, and having money here (though temporarily) for the purpose of use and investment in said business, is liable, under the act of 1855, to taxation on the sums invested in their business in this city (*Laws of 1855, chap.* 37).

*At Chambers, December,* 1883.

*S. Beardsley,* for the collector of arrears of personal taxes.

*John J. Townsend, Jr.,* assistant corporation counsel, for petitioner.

*Kelly & McRae,* for respondent.

LAWRENCE, *J.*— It is too late to attack the amount of the assessment or of the tax imposed, inasmuch as it nowhere appears that the firm of Fowler Brothers availed themselves of the provisions of the statute which relates to an erroneous assessment and the correction thereof (*Smyth* agt. *International Life Assurance Co.,* 35 *How. Pr. R.,* 126, *and cases cited*). The resident member of the firm, who makes an affidavit in opposition to this proceeding, admits that it is carrying on business here, but alleges that that business is tributary to the business in Liverpool, and that there are no moneys in this city over and above the indebtedness due from the business here to the head office in Liverpool. It is also alleged that the business done by said firm in this city is in

Matter of McMahon.

buying and receiving property, the products of other states, for sale in England or Europe, and that the money of said firm on hand here is only temporarily here for the purpose of use or investment in said business, so far as it may be necessary, in this city. It is further stated that the partner making the affidavit is the only member of said firm who resides in this city, and that all the other members are non-residents of the city and state, and that all the taxes assessed against such partner as a resident have been paid. The case of *Williams agt. The Board of Supervisors of Wayne county* (78 *N. Y.*, 561), does not avail the respondents, for the reason that there the property assessed consisted of bonds and mortgages, some of which had been sent to an agent for collection by a non-resident of the state, and the residue had been taken by him on reinvestments, and had been left or deposited with him for collection. So far as that case can be considered as affecting the state of facts disclosed in this case, it is an authority in favor of the tax. Judge RAPALLO (*at page* 567), in speaking of the act of 1855, under which the tax under consideration was imposed, says: "The act of 1855 does not relate to foreign capital in the hands of agents here or loaned to our citizens, but to capital managed here by the non-resident owners themselves, and was designed to remedy an evil then existing, which mainly consisted of persons residing near the borders of our state carrying on trades and business here in competition with our own citizens, and while enjoying the protection of our laws escaping all the burdens of taxation by having their residences beyond the boundary line." In this case it is admitted that the firm have a resident partner who manages the business for the benefit of the non-resident partners and himself. In the case of *The People ex rel. The Bank of Montreal agt. The Commissioners of Taxes* (59 *N. Y.*, 40), the decision was placed upon the ground that as the bank controlled the capital sent here to its agent for temporary loans, such capital was not to be regarded as invested in a business done here, within the meaning of the act of 1855

(see *Laws of* 1855, *chap.* 37), and at page 43 RAPALLO, J., explains the meaning of the act of 1855, and shows that it was not intended to repeal the provisions of the act of 1851, chapter 176, section 2, which exempted from taxation products of other states consigned here for sale on commission and money transmitted to agents of moneyed corporations or capitalists for the purpose of investment. The case of *The People ex rel Hoyt* agt. *The Commissioners of Taxes* (23 *N. Y.*, 224), involved an attempt to tax the personal property of a resident which was situated in another state, and does not affect this case. In the case of the *Parker Mills* agt. *The Commissioners of Taxes*, (23 *N. Y.*, 242), it was held that the goods of a non-resident owner, sent here for the purpose of sale without reinvestment of the proceeds are not liable to taxation under the act of 1855, and that the act was designed to reach the capital of non-residents employed within this state in a continuous business, and not property sent here only as to a market for sale. Now, in this case, while it is alleged that the business done by the firm in this city is in buying and receiving property the products of other states for sale in England or Europe, and that the money of said firm on hand here is only temporarily here for the purpose of use and investment in said business, so far as it may be necessary, in this city, it does appear that the firm has a continuous business here, that the resident partner has been a member of said firm for over five years last past, and that the business here is a branch of that carried on at Liverpool. It is not the case of a firm which has an agent here merely to buy or to make temporary loans, but of a firm which has set up a branch establishment as an accessory or tributary to the business carried on in England. None of the cases cited by the respondent seem to me then to apply to this case. There are several other cases in which the act of 1855 has been the subject of consideration. In the case of the *British Commercial Life Insurance Company* (1 *Abb. Ct. App. Cases*, 199), it was held that a foreign life insurance

company doing business in this state, was liable to be taxed on the deposit made by it with the comptroller of the state (*See S. C.*, 1 *Keyes*, 303 ; *S. C., below*, 28 *Barb.*, 318). In that case it appeared that the company had twenty-eight agencies in this state for the purpose of receiving applications for insurance, that the agents received the applications, and that upon the approval of the risks by the directors in England the policies were made out and transmitted to the agents here, who transmitted to the company the premiums received by them, and that the losses were paid by the agents. In that case the business done here was purely tributary to the main business in England. Not a risk could be accepted here, until it was approved there, and the premiums received here were all sent to the main office there. It is true that in that case there was a permanent fund in the hands of the comptroller, but according to the affidavit of Mr. Fowler there is in this case money here "for the purposes of use and investment in said business." It is true that he says it is only temporarily here, but it is here for the purpose of investment in the business of the partnership, which seems to me to bring it within the terms of the act of 1855. In *Duer* agt. *Small* (17 *How. Pr. R.*, 201), the plaintiff was a resident of the state of New Jersey and a member of the firm of James G. King & Sons, bankers in the city of New York. It was held by the United States circuit court that he was liable to taxation on his personal property invested in that business. It is not so expressly stated in the report of the case, but the fact was that some, if not all, of the other partners resided in this city and were liable to taxation here. As I have before remarked, in this proceeding the amount of the tax cannot be inquired into ; that should have been the subject of an application to the tax commissioners, and if the application was refused the decision would have been subject to review on *certiorari* (*Smyth* agt. *International Life Ins. Co.*, 35 *How.*, 128). The only question in the case is as to the liability of the firm to taxation on the sums

invested in their business in this city, and under the act of 1855, I think that such liability existed. The fact that the resident member has paid taxes imposed upon him individually does not affect the question. It nowhere appears that he was assessed for the moneys of the firm, and the fact that he was assessed as an individual does not affect the liability of the firm to taxation (*Duer* agt. *Small*, *supra*). On the whole case, I am of the opinion, therefore, that the prayer of the petitioner should be granted.