[Filed January 27, 1890.]

## EDGAR POPPLETON, APPELLANT, *v.* YAMHILL COUNTY, RESPONDENT.

TAXATION—NOTICE TO TAXPAYER—SUFFICIENCY OF.—The notice given by the board of equalization, or county court sitting as such board, to a taxpayer of a proposed increase of his assessment, need not specify the property to be added thereto.

BOARD OF EQUALIZATION—APPEARANCE OF TAXPAYER.—It is not necessary, where a taxpayer appears before a board of equalization, in pursuance of a notice to show cause why corrections should not be made in his assessment, and files an answer in response to such notice, that a reply to such answer be filed.

BOARD OF EQUALIZATION—PROCEEDINGS.—In proceedings before a board of equalization to make corrections of the assessment of the property of a taxpayer, the rules of practice in civil actions or suits do not apply.

NOTES AND MORTGAGES IN ANOTHER STATE OR TERRITORY.—The appellant, a resident of the county of Yamhill, Oregon, sent a sum of money to Washington Territory to be loaned out through agents there, which said agents loaned accordingly, and took notes upon such loans, secured by mortgages on real property in the territory, retaining the notes and mortgages there, and which had never been in this State, *Held*, that the board of equalization of said county had no authority, under the statutes of this State, to include the said money, notes or mortgages in the assessment of appellant's property for the purpose of taxation.

APPEAL from a judgment of the circuit court for the county of Yamhill, rendered upon a writ of review issued out of that court, directed to the county court of said county to review certain proceedings of assessment and taxation.

The assessor of the county of Yamhill applied to Edgar Poppleton, the appellant herein, for a list of his taxable property for the year 1888.   That thereupon the appellant furnished him a list purporting to be all of such property. Subsequently the board of equalization of the county caused a notice to be served upon appellant requiring him to appear and show cause why his assessment should not be increased.   In accordance with the said notice, the appellant appeared and filed a motion to dismiss the proceedings, for the reason that no proper notice had been filed and served; but said board refused to act in the matter, and adjourned without day.   The business was then taken to the county court, sitting as a board of equalization, and another notice to the same effect was by the said court caused to be served upon the appellant.   In pursuance of said last notice the appellant appeared by counsel in said court, and filed another motion to dismiss the proceeding, on the ground that the court had no jurisdiction in the premises, for the same reason assigned in the former motion.   The county court overruled the motion, and the appellant then filed an answer, setting forth what he claimed to be all his taxable property.   No reply was filed to the answer, and thereupon the appellant filed a motion for judgment in the proceedings that they be dismissed, which motion the county court denied.   The matter was then heard on testimony and proofs, and said court found the following facts: (1) That previous to his assessment for the year 1888, said taxpayer had sent to Washington Territory money to the amount of $4,500, to be loaned out in said Territory by his agents there, and which said money was so loaned before said assessment, on mortgage securities on land, and that the notes therefor were held in said Territory, and never had been in this State.   (2)   That said notes are taxable in this State and county, where said taxpayer resides.   Whereupon said court decided as follows: " It is therefore ordered and adjudged that the assessment of said taxpayer be and the same is hereby raised and increased the sum of $4,500."

The said writ of review was issued out of the said circuit court to review the said decision. The said last mentioned court, after hearing the case, decided that the grounds of error assigned· in the petition for said writ were not well taken, and adjudged that the writ be dismissed at the cost of appellant, and that the said decision of the county court be affirmed, from which judgment the appeal herein was taken.

*H. Hurley,* for Appellant.

The principal question to be determined in this case is whether the notes and mortgages taken for money loaned in the Territory of Washington by the appellant, and which had never been in this State, and were, at the time of the assessment, in the hands of agents in said Territory, are taxable in Yamhill county, or in the State. Section 2735, Hill's Code, provides: "That all lands shall be assessed and ̒ taxed in the county where the same shall lie, and every person shall be assessed in the county where he resides when the assessment is made, for real and personal property then owned by him *within such county.*" The notes and mortgages and money they represent, being at the time of assessment in the Territory of Washington, were therefore not in Yamhill county, and could not be taxed there. Under the New York statute, which provides that all land and personal estate within the State shall be liable to taxation, the courts have repeatedly held that personal property in another State, including notes and bonds, were not taxable in that State. *The People, ex rel.* Hoyt, v. *Com. of Taxes,* 23 N. Y. 224; *The People, ex rel. Jefferson,* v. *Smith,* 88 N. Y. 577. The counsel also cited the following cases: *Board of Supervisors* v. *Davenport,* 40 Ill. 197; *Catlin* v. *Hull,* 21 Vt. 152; *Fisher* v. *Com. of Rush County,* 19 Kan. 414; *Taylor. et al.* v. *St. Louis Co. Court,* 47 Mo. 594; *Albany* v. *Powell,* 2 Jones Equity, 51; *Lewis* v. *County of Chester,* 60 Penn. St. 325; *Finch* v. *York County,* 19 Neb. 50; *State Bank* v. *Richmond,* 79 Va. 113; *Redmond* v. *Rutherford County,* 87 N. C. 122.

The property in question was not intangible; mortgages, bonds, bills and notes are, by the common understanding of business men in commercial transactions, as well as of jurists and legislators, for many purposes considered property, and not as mere evidences of debt, and that they may thus have a *situs* at the place where they are found, like other visible, tangible chattels. *Dunica* v. *The County Court*, 69 Mo. 454; *Jefferson* v. *Smith, supra; Blaine* v. *Irby*, 25 Kan. 501; *Wilcox* v. *Ellis*, 14 Kan. 588; *Fisher* v. *Rush County, supra;* Desty on Taxation, 326; Burroughs on Taxation, p. 44, § 42, p. 50, § 45. The property in question was taxable in Washington Territory, and it cannot be pre sumed, in the absence of some direct statute, that it was the intention of the legislature of this State to impose the burden of double taxation upon any of its citizens. *Jefferson* v. *Smith, supra.* It being in the hands of an agent in said Territory for the purpose of being loaned out, and being taxable there, its actual *situs* in that Territory is thereby established, and the fiction that it followed the domicile of the owner must yield to the facts. 1 Desty on Taxation, p. 323; *King* v. *McDrew*, 31 Ill. 418; *McCutchen* v. *Rice County*, 7 Fed. Rep. 558; *Duer* v. *Small*, 17 How. Pr. 201; *People, ex rel. Jefferson*, v. *Smith, supra*; *Fisher* v. *Rush County, supra.* In the adjustment of systems of taxation the fiction that the *situs* of personal property follows the owner has been very generally rejected on the ground that it was productive of unjust consequences. *Fisher* v. *Rush County, supra; People* v. *Commissioners*, 35 N. Y. 440; *Green* v. *Van Buskirk*, 7 Wall. 139. Protection and taxation are co-relative words. Without such protection, or some benefit to be returned therefor, taxation would be but another form for spoliation or confiscation. *Fisher* v. *Rush County, supra.* The maxim, *mobilia sequentum personam*, does not always apply, even where the property is intangible. *Wilcox* v. *Ellis, supra; Fisher* v. *Rush County, supra.* When the appellant filed his answer, setting out fully all his taxable property, and the county failed to reply, there was no question of fact to try; all the allegations of

the answer should have been taken as true, and the court should have granted the motion to dismiss the proceeding.

*J. E. Magers* and *H. H. Hewitt,* for Respondent.

(1)   All irregularities in the notice are waived by the appearance of the appellant.   Hill's Code, § 2780; *Harker* v. *Fahie,* 2 Or. 89.   (2)   No formal pleadings are provided for by the statute, and none are necessary in proceedings before the board of equalization, or the county court sitting as such.   Title 4, Chap. 17, Hill's Code.   (3)   The *situs* of property of an invisible and tangible character, such as debts due and choses in action, is, and must necessarily, from the nature of the property, be with the person of the owner and taxable in the county where he resides.   *Johnson* v. *Oregon City,* 2 Or. 327; *Johnson* v. *Oregon City,* 3 Or. 13; Cooley on Taxation, p. 270; *Commonwealth* v. *Hayes,* 8 B. Monroe Rep. pp. 1, 2; Hill's Code, p. 1280, §§ 2731, 2741; *St. Paul* v. *Merritt,* 7 Minn. 258; *The People* v. *Cyrus A. Eastman,* 25 Cal. 601; Desty on Taxation, p. 326; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *The People* v. *Park,* 23 Cal. 138; *Railroad Company* v. *Pennsylvania,* 15 Wallace, 320; *McKeen* v. *Northampton County,* 49 Penn. St. 519; *City of Oakland* v. *Whipple,* 39 Cal. 115.

Thayer, C. J.—The notices to the appellant given by the board of equalization and county court regarding the proposed increase of his assessment were ample and sufficient.   Nor was any reply to the answer filed by appellant in response to the notice necessary.   Proceedings for the equalization of taxes are not governed by the rules of practice in civil cases, but are necessarily summary.   The taxpayer is entitled to be notified of the proposed increase, and however informal the notice may be, it will answer the purpose intended, as he will be very likely to get there, and usually will not stand upon the order of his going. Besides, the board will not be apt to get at the bottom of his affairs by the most diligent search and inquiry to which it may subject him.   The only matter that need be considered in the case is the right of the said county court

to include, in the appellant's list of taxable property, the money, notes, and mortgages he owned and held in the then Territory, now State of Washington. The question as to a right of government to tax choses in action, due to its subjects from those of another jurisdiction, has been a great source of embarrassment to the courts.

The difficulty, to a great extent, has been occasioned by attempting to apply the maxim that movables follow the person of the owner. The maxim, at best, is only a legal fiction, which may be resorted to or brushed aside, as the justice of the case requires. If the right in the outset had been considered from an equitable standpoint, the law upon the subject would have been relieved of much uncertainty. I can discover no justice whatever in a government exacting from an owner of property, which is within the territorial jurisdiction of another government, the payment of a property tax thereon, when it is subject to a like burden under the laws of the latter government, whether it be tangible or intangible, as courts have been pleased to distinguish certain kinds of property. In the present case, what grounds can there be, in sense and reason, entitling the county of Yamhill to claim that the appellant should pay, in support of the county and State government, a tax upon the $4,500 loaned out in the State of Washington, when neither said county nor the State of Oregon can afford him any protection whatever to the property? He loaned the money under the laws of the then Territory, and if it is not paid, and he is compelled to resort to compulsory means to enforce its payment, it is to the laws of that government he must look for his remedy. And the case would be the same if his agents were to embezzle the funds. Not a judge, justice of the peace, sheriff or constable within the State of Oregon could, by virtue of his office, render him the slightest assistance. How can the State then demand from the appellant a contribution on account of his ownership of this property, except as an arbitrary exaction, which is but another name for robbery? The money, notes and mortgages were undoubtedly sub-

ject to taxation in Washington Territory; the right to tax them there is sustained by a line of decisions of the courts upon the subject, since the one made in *Catlin* v. *Hull*, 21 Vt. 152, down to the present time, including *Crawford v. Linn County*, 11 Or. 482, and they are undoubtedly correct in principle.

Property, in all cases, unless exempt by law, should contribute to the expense of the government, which protects the owner in his enjoyment of it. But upon what principle a government can claim that property which is outside of its jurisdiction, and subject to the jurisdiction of another government, shall contribute to its expenses, I can not imagine, unless it be upon the ground that it has the sovereign power to enforce it. The counsel for the respondent claim that the *situs* of property of the character of that in question must necessarily, from the nature of it, be with the person of the owner, and would have this court infer from that, I suppose, that the $4,500, or the notes and mortgages, were at the time of the assessment with the person of the appellant. The county court, however, found that the money was sent to Washington Territory and loaned out by appellant's agents there, before the assessment, upon notes and mortgages which had never been in this State. The counsel's logic may be on the principle of that of the lawyer who assured his client that the authorities would not put him in jail, while the latter was listening to him from within the bars of a cell, conscious of the fact that he was already in jail, though they probably intended to claim that the legal fiction of the property being with the appellant is paramount to the actual fact. But it seems to me, under the circumstances and situation of the property, it had a *situs* in Washington Territory for the purposes of taxation under its laws, and that therefore it could not be regarded by force of a mere fiction as being with the person of the appellant. If the appellant had been a resident of Washington Territory, and had sent the money to this State, to be loaned out by his agents here, and they had accordingly

loaned it and taken notes and mortgages in security therefor, and the securities left in the hands of such agents, the property would have been taxable under the laws of this State beyond a peradventure; and the statute of Washington Territory in force at the several times when the money was loaned and the assessment made, to which our attention has been called, is sufficiently broad in its terms to have authorized the taxation of the property in that Territory.   The authorities of this State there-fore had no moral right to tax the property in question. Nor had they any legal right to do so, unless it is conceded that the statutes of this State require the taxation of property so situated, whether taxable under the laws of an-other government or not, and that such a requirement is lawful; a proposition to which I should be exceedingly loth to assent.

But even then the assessment in question cannot be upheld, as our statutes, by any fair construction, do not go to that extent.   Section 2731, Annotated Code, provides that "the terms 'personal estate' and 'personal property' shall be construed to include all household furniture, goods, chattels, moneys and gold dust, on hand or on deposit, either within or without this State; all boats or vessels, whether at home or abroad, and all capital invested therein; all debts due or to become due from solvent debtors, whether on account, contract, note, mortgage or otherwise," which is the only provision from which it could possibly be inferred that the property in question might be taxable in this State.   The section was adopted in 1854, and under-took to define the words "personal estate" and "personal property" as used in the revenue Act, of which it was a part.   Said words were to be construed as meaning certain articles on hand or deposit, within or without the State; also boats and vessels, whether at home or abroad, and all capital invested in them; and also all debts, whether on account, contract, etc.   The clause relating to debts due or to become due, etc., was evidently intended to include domestic debts only, as it does not declare, like the other

two clauses, that it includes debts due from parties "either within or without this State" or "at home or abroad," or contain terms of equivalent import, Leaving out of the latter clause the qualifying words referred to, after having inserted them in the two former ones, would indicate, on the part of the legislature, an intent not to include debts due from parties living out of the State as "personal property" or "personal estate," and authorize the con-struction indicated. The first clause of the section would include property like that in question, if it had not limited the construction to articles "on hand or on deposit." The property in question was neither on hand nor on deposit, but was in the hands of the appellant's agents in Washing-ton Territory, invested by them and under their control. The case is very similar in its features to that of *The People, ex rel. Jefferson,* v. *Smith et al.,* 88 N. Y. 576, and, I think, we can safely follow the decision therein made.

The judgment of the circuit court will be reversed, and the case remanded to that court, with directions to enter-tain the said writ of review and determine the same in accordance with the principles announced herein.