## THE STATE OF TEXAS v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

### Decided March 16. 1904.

**1.—Taxation—Personal Property of Nonresident.**

The State has power to tax all personal property within its jurisdiction though the owner resides beyond the State.

**2.—Same—Situs of Property—Municipal Bonds.**

Municipal bonds and securities, though issued by a city in and owned by a citizen of another State, assume a concrete form beyond that of mere evidence of debt, which gives them a tangible situs and renders them subject to taxation in Texas when brought here, by the owner and employed in his business within the State.

**3.—Foreign Corporation—Deposit of Bonds.**

Bonds of the city of Baltimore owned by a Maryland surety company and deposited by it with the State Treasurer of Texas, in accordance with section 2 of the Act of June 10, 1897, for the purpose of enabling such company to do business in this State, were liable to rendition and taxation for State and county purposes in the county of Travis, in which they were so held by the Treasurer.

**4.—Same—Treasurer—Rendition for Taxes.**

Municipal bonds owned by a Maryland corporation and deposited by it with the State Treasurer of Texas, in Travis County, for the purpose of obtaining a permit to do business in the State were the personal estate of a moneyed corporation within the meaning of article 5063, Revised Statutes, and were properly taxable there under the laws of the State.

**5.—Same—Rendition—Bailee—Assessor.**

The State Treasurer, as bailee of bonds deposited with him by a corporation of another State in order to obtain permission to do business in Texas was such an agent or trustee as was authorized by the statute to render the same for taxation; and if not, the adoption of his rendition by the county officer was sufficient, it being his duty to list unrendered property.

Appeal from the District Court of Travis. Tried below before Hon. R. L. Penn.

*James & Yeiser,* for appellant.

*Brooks & Shelley* and *Fiset, Miller & McClendon,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by the State against the appellee to recover taxes amounting to $1626.26, with interest thereon and penalties alleged to be due by the appellee upon securities of the value of $50,000, which were on deposit with the Treasurer of the State on the first days of January, 1898, 1899, 1900 and 1901, which were so deposited by the Fidelity and Deposit Company under a law passed by the Twenty-fifth Legislature, approved June 10, 1897, requiring foreign corporations engaged in the surety and guaranty business in this State to deposit with the State Treasurer, in order to be permitted to transact business here, good securities of the cash market value of $50,000. The sum sued for is the taxes due on this deposit for the years 1898, 1899, 1900 and 1901.

. The answer of the defendant includes a general demurrer and a special demurrer to the effect that as the appellee appears to be a corporation,

created by the laws of Maryland and there domiciled, the State for the purposes of taxation did not have jurisdiction over the property in question, because of its intangible nature, and because a recovery of taxes upon this property would be in violation of the fourteenth amendment of the Constitution of the United States and would deprive the defendant of its property without due process of law; and an answer to the effect that the securities in question were merely deposited here by the appellee in order to enable it to do business within this State, and for no other purpose, and that it had to no managing agent in this State having control of its securities, and that the interest coupons attached to the securities were transmitted to and collected from the home office in the State of Maryland, and that the securities were at all times assessed for taxation in the State of Maryland, and were there paid by the city of Baltimore under a statute of that State requiring the city to pay taxes on this property, and that the defendant has, for each of the years mentioned in the plaintiff's petition, paid all the taxes required by the State of Texas, such as its franchise tax and the tax on its gross earnings.

The trial court overruled all the demurrers and rendered judgment to the effect that the State take nothing by its suit.

The facts agreed upon are as follows:

"1.   That the defendant herein is a corporation duly incorporated under the laws of the State of Maryland, and was doing business on the 1st day of January, 1898, and has continued to do business since said date in the State of Texas up to the present time, under a regular permit to do business in this State, issued in full compliance with the laws of this State; and it has no managing agent or general agency of any character within the State having any control over the securities hereinafter mentioned, and that the coupons representing interest on the securities hereinafter mentioned are at maturity transmitted to and collected from the home office.

"2.   It is agreed that the securities, the taxes upon which are sued for in this cause, were deposited with the Treasurer of the State of Texas, prior to the 1st day of January, 1898, under and by virtue of the provisions of chapter 155, acts Twenty-fifth Legislature, page 244, and were on deposit with said State Treasurer under and by virtue of the requirements of said law, and not otherwise, on the 1st day of January, 1898, and on the 1st day of January, 1899, the 1st day of January, 1900, and the 1st day of January, 1901, and that said deposit of said securities was made with the State Treasurer in compliance with the said law of the State of Texas for the purpose of enabling the said defendant to do business in this State, and for no other purpose, and that the cash market value of said securities was, as assessed on the 1st day of January of each of said years, the sum of $50,000.

"3.   That on the 1st day of January, 1898, 1899, 1900 and 1901, the said defendant had on deposit with the Treasurer of the State of Texas, in compliance with the laws of the State of Texas as aforesaid, the fol-

lowing securities or evidence of indebtedness described in plaintiff's petition, to wit, $50,000 of certificates of stock of the city of Baltimore of the cash market value on the 1st day of January of each of said years of $50,000.

"4. That if the said defendant is liable for taxes at all, to the State of Texas and county of Travis on the foregoing property, the taxes on the aforesaid property for the year 1898 due to the State of Texas and county of Travis amounts to $415; and for the year 1899, $415; and for the year 1900, $398.33; and for the year 1901, $398.33; that demand has been made upon said defendant for payment of said taxes prior to the ordering and institution of this suit, and that the defendant has refused to pay same or any part thereof; that on the 30th day of January, 1902, J. E. Kaufman, tax collector of Travis County, Texas, did assess the aforesaid property for each of the aforesaid years for taxes, upon the statement given him by John W. Robbins, State Treasurer, of the amount of same for each year, being the respective amounts set out in the foregoing paragraph, and did place the aforesaid assessments for each of the aforesaid years upon his tax collector's supplemental assessment roll, which was, by the Commissioners Court of Travis County, Texas, in open court duly approved on the 30th day of January, 1902; that the defendant was duly notified of said assessment by the said J. E. Kaufman, tax collector of Travis County, Texas, on the 31st day of January, 1902, and demand was by him then made upon defendant for the payment of the taxes so assessed, and payment was refused, and suit was thereupon ordered by the Commissioners Court of Travis County, Texas.

"5. That the aforesaid securities so assessed for taxes, and so claimed to be liable for taxes by the State of Texas and county of Travis for the foregoing years were never rendered for taxation for any of said years by said defendant in any other county of the State of Texas, and no other taxes on same have ever been paid in any county in the State of Texas, and that said property was subject to and rendered for taxation by defendant company under the laws of the domicile of said corporation, and was for each of said years then and there assessed for taxation, and that the taxes so assessed were then paid to the proper officials in the State of Maryland by the city of Baltimore under a statute of the State of Maryland requiring the city of Baltimore to pay taxes on all stock issued by it. That defendant has for each of the years above mentioned paid its franchise taxes and annual tax on gross earnings to the State of Texas, as the law requires."

*Opinion.*—The questions to be determined are: First, is the situs of the property in question within this State, so as to authorize the State to exercise its jurisdiction to tax it? Second, do the laws of this State relating to the taxation of property include property of the class in controversy; and has the law been complied with in rendering and assessing the property for taxes?

The State has the undoubted authority to tax all property, real and personal, within its jurisdiction. McCulloch v. Maryland, 4 Wheat., 316; Tappan v. Mer. Nat. Bank, 86 U. S., 490; Coe v. Errol, 116 U. S., 517; Pullman Car Co. v. Pennsylvania, 141 U. S., 18; Savings and Loan Assn. v. Multnomah County, 169 U. S., 426; New Orleans v. Stempel, 175 U. S., 309; Bristol v. Washington County, 177 U. S., 144; Blackstone v. Miller, 188 U. S., 202; Piano and Organ Co. v. City of Dallas, 2 Texas Ct. Rep., 262; and Western Assurance Co. v. Halliday, a recent case decided by the United States Circuit Court of Appeals of the Sixth District, on November 3, 1903. And this power may be exercised over the property within the State, although the domicile and residence of the owner may be elsewhere. Cases supra.

The question arises, were the securities at the time they were assessed for taxes within this State in the sense that it had jurisdiction over them for the purposes of taxation? The legal fiction that personal property attaches to the person of the owner, and is subject only to the jurisdiction of the laws of his domicile is not obsolete and without force, but has been by recent and well considered cases much modified, not only as to the classes of property that come within the spirit of the rule, but has extended a denial of an application of the doctrine where property is situated within a jurisdiction other than that of the owner, which former jurisdiction by the exercise of its laws assumes jurisdiction over it for the purposes of taxation, in order that it may bear its proportion of the burdens of the government of its actual situs that affords it protection. And this power may be exercised over the property of the nonresident that is in a sense intangible, which by its character in a concrete form is capable of having a value and an actual physical situs where permanently found, and in cases where its situs in the jurisdiction different from the domicile of the owner is for a business use and purpose. These cases rest upon the reason that the owner having voluntarily, by his conduct, fixed the situs of his property in another jurisdiction, which by its laws affords protection to it, must bear its equal proportion of the burdens of the government of its actual situs. Of course this rule does not establish the situs of such property different from that of the domicile of the owner, where it is merely temporarily in another jurisdiction, not there associated with a business use, or where it is merely in transitu.

In Redmond v. Rutherford Commissioners, 87 N. C., 122, the Supreme Court of that State in determining the situs of property somewhat of the character of that involved in this suit, uses this language: "The theory of taxation is that the right to tax is derived from the protection afforded to the subject upon which it is imposed. The debts due to the plaintiffs upon their land contracts are personal estate, the same as if they were due upon notes or bonds, and, so far as they have any substantial existence, they are in this State and not elsewhere. Their validity and protection and the remedies for their enforcement all depend upon the laws of this State, and in neither respect, nor in any other that we can think of, do they take any benefit from the laws of the plaintiff's domi-

cile. It is but just, therefore, that they should contribute towards the support of the only government which affords them protection, and help to defray the expenses incurred in so doing."

The Supreme Court of the United States in the case of Bristol v. Washington County, supra, in a case involving the liability of the owner for taxes due upon property of the nature involved in this suit, situated in a State different from his domicile, says:

"Persons are not permitted to avail themselves, for their own benefit, of the laws of a State in the conduct of business within its limits, and then to escape their due contribution to the public needs through action of this sort, whether taken for convenience or by design."

The case of Buck v. Miller, by the Supreme Court of Indiana, reported in 37 Law. Rep. Ann., 389, and Hubbard v. Brush, 61 Ohio St., 252, and Western Assurance Co. v. Halliday, and many other cases that might be cited, announce the same doctrine.

The facts as agreed upon do not advise us of the nature of the securities in question, upon which the tax is sought to be imposed. The appellee in its brief, on page 11, uses the expression that the securities in question would naturally be included in the expression "bonds and other evidences of debt," here referring to a provision of the tax laws of this State; but from the manner in which they are treated by the parties in their briefs, we may assume that they are either bonds or municipal securities of some form, executed by the city of Baltimore, and for the payment of which it is liable.

Municipal bonds and securities, when properly executed, assume a concrete form, which gives to them a tangible status. They are more than merely evidences of debt. They may be stolen or converted and the wrongdoer held responsible for their value. Toms v. Morse, 80 Texas, 291. It is admitted that these bonds or securities, whatever they may be termed, have a fixed value of $50,000; and it must be assumed that they are worth that much in the market, and can be sold for that sum. They constitute property within the meaning of the law, and their concrete form and fixed value as municipal securities give them a tangible existence. This doctrine is recognized in the case of State Tax on Foreign Held Bonds, 15 Wall., 300, one of the leading cases relied upon by appellee, which case, however, on denying the situs of personal property being different from that of its owner, has been qualified by the recent decision of Savings and Loan Assn. v. Multnomah County, 169 U. S., 421, and New Orleans v. Stempel, 175 U. S., 309, and Blackstone v. Miller, 188 U. S., 206, where in the last case Judge Holmes, in the progress of his opinion, states that the case of State Tax on Foreign Held Bonds has been cut down to its precise point by later cases of that court.

In the case of State Tax on Foreign Held Bonds, the Supreme Court states: "It is undoubtedly true that actual situs of personal property which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the State in which it may be

taxed. The same thing is true of public securities consisting of State bonds and bonds of municipal bodies and circulating notes of banking institutions. The former by general usage have acquired the character and are treated as property in the place where they are found, though removed from the domicile of the owner. The latter are treated and passed as money, wherever they are."

Judge Brewer in the case of New Orleans v. Stempel, 175 U. S., 309, in the concluding part of his opinion, says: "It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicile of the owner."

Judge Holmes, in the case of Blackstone v. Miller, 188 U. S., 206, says: "Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. Bacon v. Hooker, 177 Mass., 335. Therefore, considering only the place of the property, it was held that bonds held out of the State could not be reached." And this view of the situs of such property is maintained by the court in the recent case of Western Assurance Co. v. Halliday.

But, however, if we are mistaken in the view just expressed, we are clearly of the opinion that the situs of the property in question for the purposes of taxation is in this State, where it is here used and employed in furtherance of the business in which the Fidelity and Deposit Company is engaged. If we treat the securities as intangible property, its situs here for business purposes confers jurisdiction upon the State to tax it, for it would be unjust that it should receive the protection of the government of its actual situs without requiring it to contribute to the support of that government. In cases of this character, the fiction of the law that places intangible property at the domicile of the owner, has been, by many well considered cases, made to yield to the law of the actual situs of the property. In Pullman Car Co. v. Pennsylvania, 141 U. S., 18, it is said:

"No general principles of law are better settled or more fundamental than that the legislative power of every State extends to all property within its borders, and that only so far as the comity of that State allows can such property be affected by the law of any other State. The old rule expressed in the maxim 'mobilia sequuntur personam,' by which personal property was regarded as subject to the law of the owner's domicile, grew up in the Middle Ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property not immediately connected with the person of the owner, that rule has yielded more and more to the lex situs, the law of the place where the property is kept and used. Green v. Van Bushkirk, 72 U. S., 307; Hervey v. Rhode Island Locomotive

Works, 92 U. S., 664; Harkness v. Russell, 118 U. S., 663; Walworth v. Harris, 129 U. S., 355. As observed by Mr. Justice Story, in his commentaries just cited, 'Although movables are for many purposes to be deemed to have no situs, except that of the domicile of the owner, yet this being but a legal fiction, it yields whenever it is necessary for the purpose of justice that the actual situs of the thing should be examined. A nation within whose territory any personal property is actually situate, has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate therein.' For the purposes of taxation, as has been repeatedly affirmed by this court, personal property may be separated from its owner; and he may be taxed on its account at the place where it is, although not the place of his own domicile, and even if he is not a citizen or resident of the State which imposes the tax." The court then proceeds to cite many cases of the Supreme Court of the United States in accord with this view.

In the case just cited the property was admittedly of a tangible nature. But, as said by the Supreme Court in the case of Eidman v. Martinez, 184 U. S., 382, the same principle has been applied not only to tangible property but to credits and notes, citing the case of Tappan v. Merchants Nat. Bank, 19 Wall., 490; Savings and Loan Association v. Multnomah County, 169 U. S., 421; New Orleans v. Stempel, 175 U. S., 309, and Bristol v. Washington County, 177 U. S., 133. And in the course of the opinion delivered in Eidman v. Martinez, the court says: "Recent cases in this court have affirmed very broadly the right of the Legislature to tax the local property of nonresidents, and particularly of corporations who are permitted by comity to do business within the State." Citing many cases, among which is the recent case of Adams Express Co. v. Ohio State Auditor, 166 U. S., 185, where the question is discussed as to the power of the State to tax the tangible as well as the intangible property of a nonresident corporation.

The case of Savings and Loan Association v. Multnomah County, 169 U. S., 423, was where a citizen of California objected to a tax being imposed upon his mortgages and notes secured on land in Oregon. The court held that these evidences of debt were properly taxed in Oregon.

Bristol v. Washington County, 177 U. S., 133; New Orleans v. Stempel, 175 U. S., 313; Buck v. Miller, 37 Law. Rep. Ann., 385, and the recent case of the Jesse French Piano and Organ Co. v. City of Dallas, 2 Ct. Rep., 261, in which the Supreme Court of this State refused a writ of error, were cases in which taxes were imposed upon credits, bills, bonds and notes by the State where they were actually situated, although the owners resided in other States; and this principle is recognized by the Supreme Court of the United States in the recent case of Blackstone v. Miller, 188 U. S., 204. These cases, as well as many cited in the opinions there delivered, and many other cases bearing upon this subject which could be named by this court, in effect announce the doctrine that where the owner of property of that character carried

it into a State different from that of his domicile, there to be employed in a business purpose and use, the situs of its taxation was in the State where it was so used. As expressed by the Supreme Court of Minnesota In re Jefferson, 25 Minn., 215, such conduct of the owner fixed a business situs of the property different from that of his domicile.

In Tappan v. Merchants Nat. Bank, 86 U. S., 490, it is said, in speaking of the shares of stock in national banks: "They are a species of personal property which is in one sense intangible and incorporeal, but the law which creates them may separate them from the person of their owner for the purpose of taxation, and give them a situs of their own. * * *

"We do not understand the counsel for the appellee to dispute this power, where the property is, tangible, and capable of having, so to speak, an actual situs of its own, but he claims that if it is intangible, it can not be separated from the person of its owner. It must be borne in mind that all this property, intangible though it may be, is within the State. That which belongs to nonresidents is there by operation of law. That which belongs to residents is there by reason of their residence. All the owners have submitted themselves to the jurisdiction of the State, and they must obey its will when kept within the limits of constitutional power. The question is then presented whether the general assembly having complete jurisdiction over the person and the property, could separate a bank share from the person of the owner for the purposes of taxation. It has never been doubted that it was a proper exercise of legislative power and discretion to separate the interest of a partner in partnership property from his person for that purpose, and to cause him to be taxed on its account at the place where the business of the partnership was carried on; and this, too, without reference to the character of the business or the property. The partnership may have been formed for the purpose of carrying on mercantile, banking, brokerage or stock business. The property may be tangible, or intangible, goods on the shelf, or debts due for goods sold. The interest of the partner in all the property is made taxable at the place where the business is located. A share of stock may be in itself intangible, but it represents that which is tangible. It represents money or property invested in the capital stock of the bank. That capital is employed in business by the bank, and the business is very likely carried on at a place other than the residence of some of the shareholders. The shareholder is protected in his person by the government at the place where he resides; but his property in this stock is protected at the place where the bank transacts its business. If he were a partner in a private bank doing business at the same place, he might be taxed there on account of his interest in the partnership. It is not easy to see why, upon the same principle, he may not be taxed there on account of his stock in an incorporated bank. His business is there as much in the one case as in the other. He requires for it the protection of the government there,

and it seems reasonable that he should be compelled to contribute there to the expenses of maintaining that government."

In Finch v. York County, 19 Nev., where notes and mortgages were held by an agent in the State where they were taxed, the court said: "The power of the Legislature to separate for the purposes of taxation the situs of the personal property, whether of a tangible nature or in the form of choses in action, from the domicile of the owner, is unquestioned, and if such property, in any form, is within its jurisdiction, it may tax it."

In Tazewell County v. Davenport, 40 Ill., 197, the plaintiff, a nonresident, carried on a permanent business of loaning money, and remained within the State long enough to transact his business. The court held that his money and credits employed in such business, and also money and credits of others residing out of the State, but used and controlled by him as their agent, were subject to taxation within the State. The case of People v. Smith, 88 N. Y., 576, is to the same effect. Also Poppleton v. Yamhill County, 18 Ore., 377; Swallow v. Toms, 16 Kan., 58; Redmond v. Rutherford, 87 N. C., 122; Jefferson Estate, 35 Minn., 215; In the Matter of McMahon, 66 How. Prac., 190.

In Marye v. Railway Co., 127 U. S., 117, it is held that where property is brought into the State, and used by a corporation, it may be taxed.

In Hubbard v. Brush, 61 Ohio, 252, the court says: "If men choose to resort to another State or country for authority to organize a corporation for the purpose of engaging in business in this State, or if that was not their original purpose, choose afterwards to plant themselves herein, and in either case transact the business wholly within our borders, and enjoy the protection of our laws, it is only just and reasonable that their property should be subject to taxation herein, as fully as if its organization had been effected under our laws; and the right of taxation should not be defeated nor limited upon the ground that for some other purpose the situs of a part of its property should be regarded as being in the State or country where the corporation is organized. Where foreign corporations voluntarily bring their personal property and business into this State to avail themselves of advantages found here which they believe will enhance the probabilities that the business they intend to pursue will be profitable, they should not be heard to complain of laws which tax them as domestic corporations are taxed by the State. We hold, therefore, that the provisions of section 2744, which makes it the duty of foreign corporations to list, for taxation in this State, their choses in action, where they are held within this State and grow out of the business they conduct herein, is a valid exercise of the taxing powers vested in the State. This holding finds support in many adjudications, among them which may be cited People v. Village of Ogdensburg, 48 N. Y., 390; Redmond v. Comrs., 87 N. C., 122; State v. St. Louis County Court, 47 Mo., 594."

This language is quoted with approval in the recent case of Western Assurance Company v. Halliday et al.

In view of the rule of law just discussed, the question arises, was the appellee corporation, at the time the taxes were assessed, engaged in business in this State, and were the securities in question employed and used in that business?

The act of the Twenty-fifth Legislature, approved June 10, 1897, found upon page 244 of the session laws, provides for the organization and creation of guaranty and surety companies, and authorizes like companies created by the laws of other States to enter this State for the purpose of carrying on such business, upon a compliance with the law granting them a permit to do business here. Section 2 prescribes that such companies, to be so qualified to act as surety or guarantor, must comply with the requirements of every law of this State applicable to such companies doing business here. It is required that they must have fully paid up and safely invested an unimpaired capital of $100,000, and must have good available assets exceeding its liabilities, which shall be taken as its capital stock, and must file with the Commissioner of Insurance a copy of its certificate of incorporation, and a written application to do business in this State; and must thereafter make a verified statement of the amount of its paid-up cash capital, its items of investment and generally of its business condition. It must appoint an attorney in this State upon whom process can be served, and shall have on deposit with the Treasurer of this State at least $50,000 in good securities, worth at par and market value at least that sum, to be held for the benefit of the holders of the obligations of such company. And it is expressly provided that the securities so deposited with the Treasurer are to remain with him in trust to answer any default of said company as surety upon such bonds, undertaking, recognizance or other obligation, established by final judgment, upon which execution may lawfully be issued against said company; said treasurer and his successors in office are required to receive and retain such deposit in trust for the purposes thereafter mentioned. The surety and deposit company has the right to collect the items of interest, dividends and profits upon such securities; and from time to time withdraw the securities and substitute therefor others of equally good character and value to the satisfaction of the Treasurer. The securities so deposited are not subject to levy under writ or process of attachment. It is also provided that such company may, at any time, surrender to the Commissioner of Insurance, Statistics and History its certificate of qualification, and shall thereupon cease to engage in said business of suretyship, and such company shall, thereupon, be entitled to the release and return of its deposit, but in such case, the company shall be required to file with the Treasurer of the State a bond in a sum equal to the whole amount of its liability in the State, if any such liability exists.

It is also provided that if any suit is instituted upon any bond or obligation of any surety company, the proper court of any county where said

bond is filed shall have jurisdiction of said cause, and service therein shall be made upon the attorney of said company or upon the Commissioner of Insurance, and when so made shall be as effectual as service upon the company. And such guaranty and surety companies shall be deemed residents of the county where they may do business, and the doing or performing of any business in any county shall be deemed an acceptance of the provisions of this act. This is provided for in section 6. Section 7 requires that when said company shall refuse or fail to pay any loss incurred in this State within sixty days, the State Treasurer shall, out of the deposit left with him, pay such losses.

The domicile of a corporation is within the jurisdiction that creates it, but it is a well settled principle that foreign corporations, seeking to do business within another jurisdiction, with some exceptions, can only enter it for the purpose of doing business under a permit, when one is required, and the law granting the permission can impose conditions, that practically submit such corporation to the jurisdiction of the State where admitted, so far as pertains to the business there carried on.

When the appellee, The Fidelity and Deposit Company, entered this State, it subscribed to the laws that authorized it to do so, and submitted itself, for the purposes mentioned in the statute quoted, to the jurisdiction of this State. And when it voluntarily brought its property here to be used and employed in connection with its business, and that was necessary to be deposited with the State Treasurer under the law that authorized it to do business, as a predicate upon which its business operations should be based, it likewise submitted such property to the jurisdiction of this State for the purposes of taxation. The property when brought and used here for business purposes, acquired in this State a business situs.

It is contended that the property was brought here merely as a deposit as an evidence of good faith upon the part of the appellee that it would comply with and observe the terms of the law that authorized it to do business within this State.

We can not accept this view, as we think that the deposit is more than a pledge of good faith, and is more than one merely of a temporary nature. There is nothing in the facts as stated that indicates that the Fidelity and Deposit Company was merely temporarily in this State, or that its securities were merely a temporary deposit. On the other hand it is clearly indicated that the deposit was intended to be permanent, just so long as the company intended to do business within this State. They were here three years prior to the time that the property was assessed for taxes, and there is nothing in the record indicating an intention to suspend business here. The property was here for that length of time in the custody of the State Treasurer, voluntarily placed there by the foreign corporation, which it is admitted had accepted the benefits of the law, and that it was engaged in business within this State. It is true that the securities in question were not loaned out to its customers, but it was a fund that attracted customers, which could only be

obtained by the corporation so long as the funds remained upon deposit. Without the deposit of these securities here in this State, they could transact no business. It stood as a bailment, held here by the Treasurer for the purpose of securing the guaranty contracts entered into by the corporation within this State; and the security so held was an incident of those contracts and a part of the same. Bringing the securities here and pledging them for the payment of the obligations which the corporation might enter into in this State, evidences the fact that this fund was being used to operate upon in their business here. Locating and pledging it here as security for its obligations invested the fund with a character of use subjecting it to the jurisdiction of this State, as much so as if the securities were brought here and used by loaning them out in a business way, through its trustees or agents within this State.

On this subject and the one previously discussed, the following authorities are instructive, all of which have been previously cited: In the case of Buck v. Miller, where bonds, stocks and notes were assessed in Indiana, where they were situated, but owned by a nonresident, it was in effect held that such personal property within the State is assessable for the taxes, though the owner resides elsewhere. The court in passing upon this question uses this language:

"Notwithstanding all this, we are still firmly of the opinion as heretofore expressed, that if personal property is used in business in this State, it ought to be assessed for taxes, even though the owner may claim to be a citizen and domiciled in another State; and this must be true of moneys and credits, as well as other forms of personal property. We are still of the opinion also, that the business may be done in buying and selling property, including bonds, stocks, notes and mortgages, and in making loans and investments and reloaning them from year to year; and that if moneys and securities so used are retained in this State, they should be subject to taxation here, quite the same as any other kind of property."

In the case of Bristol v. Washington County, supra, notes and mortgages were taxed by the State of Minnesota, which belonged to a citizen of another State. The law imposing the tax was held to be constitutional. The court in the progress of the opinion says:

"The creditor, however, may give it a business situs elsewhere, as where he places it in the hands of an agent for collection or renewal, with a view of reloaning the money and keeping it invested as a permanent business." And quoting from the case of Tazewell v. Davenport, 40 Ill., says: "The obligation to pay taxes on property for the support of the government arises from the fact that it is under the protection of the government. Now here was property in this State, not for a mere temporary purpose, but as permanently as though the owner resided here; it was employed here as a business by one who exercised over it the same control and management as over his own property, except that he did it in the name of an absent principal. It was exclusively under the protection of the laws of the State,—it had to rely on those laws for

35 Civ—15

the force and validity of the contracts on the loans and the preservation and enforcement of the securities."

In New Orleans v. Stempel, where certain taxes were levied on money on deposit, and also on money loaned at interest, credits and bills receivable by the laws of Louisiana, where they were situated, but owned by a nonresident, Judge Brewer in the progress of the opinion in effect holds that there was no constitutional impediment in the way of the taxation imposed by the laws of Louisiana; that the actual situs of such property was in Louisiana, where it was employed and used by the owner.   This is a well considered case upon the subject of the situs of what is generally understood to be intangible personal property; and it, with the cases therein cited, is strongly in point on the principal questions passed upon by us in the decision of this case.

In a well considered opinion by Associate Justice Fly, in the case of Jesse French Piano and Organ Company v. City of Dallas, where a number of the authorities upon this subject are cited, and which explains the case of Ferris v. Kimble, 75 Texas, and the case of Primm v. Fort, 57 S. W. Rep., decided by this court, and distinguishes them from the case in which he delivers the opinion, it is held that notes in this State used in the business of a foreign corporation were located here for taxation.

We now come to cases which are more nearly in point, if not directly so, upon the questions involved in this case.   A law of New York, somewhat similar to the statute under which the securities in this case were deposited with the Treasurer, required foreign insurance companies, in order to do business, to make a deposit with the State Comptroller.   In construing that law, the court in the case of British Com. Insurance Co. v. Com. of Taxes, 18 Abbott, 130, same case, 32 N. Y., 32, uses this language:

"The deposit with the comptroller is necessarily made in connection with the business of the company.   Without it, they could do no business.   It is therefore used in the business of the company, and in fact forms its capital in this State, which is liable to its creditors, and comes within the definition of capital, as defined in the Mutual Insurance Co. v. Supervisors, 4 Comst., 442.   These securities so deposited with the comptroller form the same kind of capital as that of a domestic corporation for a similar purpose, in which the capital is the security for those who deal with it.   Neither is actually invested in business and used for that purpose, but forms the basis on which the business is transacted, and the security from the payment of claims is to be enforced."

"In People v. Home Insurance Co., 29 Cal., 533, bonds deposited with a banking concern, as trustee to hold for the protection of the policy holders in the State in a foreign insurance company required to make such a deposit as a condition to doing business, were held to be taxable by the State as a portion of the capital of the company employed in its business in California.   To the same effect is International Life Ins. Co. v. Commonwealth, 28 Barber, 318."

These are cases cited and the quotation is extracted from the opinion

in Western Assurance Co. v. Halliday, which latter case is directly in point on the questions involved in this appeal. This case is not reported, but we have before us a copy of the opinion delivered by Judge Lurton, on November 3, 1903, of the Circuit Court of Appeals for the Sixth Circuit. It is a well considered opinion, and, in effect, passes upon every question involved in this case; as in our opinion the tax laws of Ohio, where the case originated, are somewhat similar to the laws regulating taxation here. In that case, the Western Assurance Company, a corporation domiciled in Canada, brought a suit against the appellees to restrain the collection of taxes imposed and levied upon a deposit of Ohio municipal bonds, held by the Treasurer of that State as security for the policy holders of the insurance company. We gather from the opinion that the State Treasurer, or the superintendent of insurance, held these bonds as trustee for the benefit of the policy holders under a law somewhat similar to the statute under which the deposit was made in the case before us. The same points against the validity of the tax were urged in that case as are raised here. The court in effect held, after citing many of the authorities named in this opinion and some others, that the bonds in question, as property, had assumed a tangible form, or if not, they were voluntarily placed in the State of Ohio by the appellant as the basis for the prosecution of its business, and that in either aspect, they assumed an actual situs within the State of Ohio; and as the law of that State was broad enough to include property of this class in its scheme of taxation, it was subject to taxes there, although the domicile of its owner was elsewhere.

The next important question to be determined is, whether this State, by its laws of taxation, includes and embraces property of this character, and whether it was properly rendered and assessed for taxation.

Article 8, section 11, of the Constitution requires that all property, whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in the county where it is situated. The following provisions of the law, as stated in Sayles' Civil Statutes and in some session laws which will be noticed, bear upon this subject:

"Article 5061. All property, real, personal or mixed, except as may be hereafter expressly exempted, is subject to taxation, and the same shall be listed as herein prescribed.

"Art. 5063. Personal property shall, for the purposes of taxation, be construed to include all goods, chattels and effects, and all moneys, credits, bonds and other evidences of debt owned by citizens of the State, whether the same be in or out of the State. All ships, boats and vessels belonging to inhabitants of this State, if registered in this State, whether at home or abroad, and all capital invested therein; all moneys at interest, either within or without this State, due the person to be taxed, over and above what he pays interest for, and all other debts due such persons, over and above their indebtedness; all public stocks and securities; all stock in turnpikes, railroads, canals and other corporations (except

national banks) out of the State owned by inhabitants of this State; all personal estate of moneyed corporations, whether the owners thereof reside in or out of this State, and the income of any annuity, unless the capital of such annuity be taxed within this State.

"Art. 5176. All real and personal property held or owned by any person in this State shall be liable for all State taxes and county taxes due by the owner thereof, including taxes on real estate, personal property and poll taxes."

Acts of the Twenty-fourth Legislature, pages 96 and 116, and first called session of the Twenty-sixth Legislature, provide that there shall be collected an annual ad valorem State school tax, and an annual ad valorem State tax on all real property situated, and on all personal property owned in the State. Acts of the Twenty-fifth Legislature, page 203, require that all property, real and personal, such as not required to be listed and assessed otherwise, shall be assessed in the county where it is situated.

"Arts. 5067 and 5084, sec. a. All property of corporations shall be assessed and shall be listed by the president or agent."

"Subdivision 6, art. 5067. The property of a person for whose benefit it is held in trust, shall be listed by the trustee of the estate.

"Art. 5074. Persons required to list property on behalf of others, shall list it in the same manner in which they are required to list their own; but they shall list it separately from their own, specifying in each case the name of the person, estate, company or corporation to whom it belongs."

Subdivisions 32, 33 and 39, art. 5076, require that the statement describing the property to be rendered for taxation shall include the amount and value of bonds and stocks, other than United States bonds; the amount and value of shares of capital stock of companies and associations not incorporated by the laws of this State; and subdivision 35: "Shall state the value of all property of companies and corporations, other than property hereinbefore enumerated."

"Art. 5084. All property of private corporations, except in cases where some other provision is made by law, shall be assessed in the name of the corporation, and in collecting the taxes on the same, all personal property of such corporation shall be liable to be seized wherever the same may be found in the county, and sold in the same manner as the property of individuals may be sold."

"Subdivision 5, art. 5088. Personal property of every description shall be valued at its true and full value." Subdivision 7; "Every credit for a sum certain, payable either in money or property of any kind, shall be valued at its full value of the same so payable."

Article 5118, regulating the manner and form of assessing, in subdivision 37: "The amount of solvent credits of bank, banker, broker, stock jobber, or any other person." Subdivision 38: "The amount and value of bonds and stocks." Subdivision 40: "The value of prop-

erty of companies and corporations, other than property hereinbefore enumerated." This article requires this character of property to be listed for taxation.

Article 5121 provides that if the assessor of taxes shall discover in his county any property, or outside of his county, but belonging to a resident of the county, any personal property which has not been assessed or rendered for every year for two years past, he shall list and assess the same.

"Art. 5107. In all cases of failure to obtain a statement of real and personal property from any cause, it shall be the duty of the assessor of taxes to ascertain the amount and value of such property, and assess the same as he believes to be true and full value, and such assessment shall be as valid and binding as if such property had been rendered by the proper owner thereon."

Article 5121a provides that the collector of taxes shall assess unrendered property and collect the taxes on the same.

The term personal property, when employed in a tax law, includes bonds, notes, credits and choses in action. Jesse French Piano and Organ Co. v. City of Dallas, 2 Ct. Rep., 261; Buck v. Miller, 37 Law. Rep. Ann., 388; Boyd v. Selma, 16 Law. Rep. Ann., 731; Western Assurance Co. v. Halliday, and 22 Am. and Eng. Enc. of Law, 747.

It is clear from these authorities and the provisions of the statutes quoted, that property of this class is embraced within the scheme of taxation provided for in this State; and it can not be successfully contended that article 5063 only applies to property of citizens of this State. This is practically the effect of the ruling made in Jesse French Piano and Organ Co. v. City of Dallas, in which case, as said before, a writ of error was refused. The court there gave effect to the provision of the statute taxing all property, real, personal and mixed, as applying to that owned by a nonresident situated within this State, as well as to property owned by citizens of the State.

The statute in express terms and by necessary implication includes the intangible personal property of the citizens of the State; and it is clear, in our opinion, from all the provisions of the law relating to the subject of taxation, that it was not the intention to exclude from taxation property owned by nonresidents that had a taxable situs within this State. If the property, although of an intangible nature, acquired a situs here, it was clearly subject to taxation, because the law and the Constitution impose taxes upon all property within this State, and as said in article 5176, "whether held or owned by any person in this State."

We are also of the opinion that the language of article 5063, to the effect, "all personal estate of moneyed corporations, whether the owners thereof reside in or out of the State," is a classification of personal property which embraces the kind in controversy, upon which the taxes are sought to be imposed. This is an express provision providing for taxa-

tion of the personal estate of moneyed corporations, although the owner may reside out of the State. The owner in this instance is the Fidelity and Deposit Company, and its residence is out of the State, and it only remains to be determined whether the expression "personal estate" will include this character of property, and whether the appellee is a "moneyed corporation."

The language here used is not to be applied in a restrictive sense. The word "estate" includes all species of property, applicable alike to real and personal. 11 Am and Eng. Enc. of Law, 2 ed., 358, 363; and in its broadest sense is held to include choses in action. Id., 360.

The expression "moneyed corporation" was evidently intended to. mean all classes of corporations organized and created for business purposes, as distinguishable from public or charitable or other corporations, which are exempted by law from taxation. This we believe to be the usual meaning applied and given to this expression. The Legislature evidently did not intend to use it in a restrictive sense, as applied only to corporations that dealt exclusively in money, for there are certain portions of the statute that relate and apply especially to banks and banking corporations, prescribing the manner of assessing their property, and classifying the property subject to taxation. If it had been the intention of the Legislature to apply this expression exclusively to banks, it would have been unnecessary to have so particularly provided the laws regulating the assessment and taxation of property owned by those institutions. Further, we ought not to ascribe to the Legislature an intention and purpose to create an inequality and discrimination in selecting the subjects of classification, and in providing a remedy for the assessment and collection of taxes; and that they intended to create an exemption in favor of one class, when those of another class similarly situated are subject to taxation.

If the expression "moneyed corporation" is to be applied in a narrow and restrictive sense, the effect would be to create a taxation upon those corporations that handle and deal in money as their business, and would exclude from the operation of the law many corporations engaged in this State in business enterprises which are doubtless as profitable to them as is the case of those engaged in the banking and money loaning business. We should apply this expression in a common sense way, so as to reach, if necessary, the intention of the Legislature. That intention, in our opinion, being, as evidenced by all the laws upon this subject, to tax the property of all corporations which has a permanent situs in this State. The expressions "moneyed business" or "moneyed man" are often used, and in their common acceptation and generally understood meaning, we do not apply them solely to the business of handling and loaning money, or to a man whose property merely consists of money; but, as said by the Supreme Court of Pennsylvania, in Jacob's Estate, 140 Pa. St., 274, "that the word money is properly known and used as indicating property of every description is well known. Thus it is very common to refer to a person as a 'moneyed man' because of

his large possessions, yet those possessions may consist exclusively of real estate."

We are of opinion that the property in question was properly assessed and rendered for taxation. The law authorizes the assessor and collector to assess taxes on unrendered property; and if we were prepared to hold that the rendition by the State Treasurer was without authority, the fact that it was actually assessed by the tax collector of the county where it was situated would be a sufficient compliance with the law. The adoption of the redition by the collector tendered him by the Treasurer, although such rendition was unauthorized, would make the assessment in law that of the collector; which assessment he is required to make when property within his county is discovered to be not assessed. But we are of the opinion that the State Treasurer, as the legal custodian of the property in question, was in effect the trustee or agent of the foreign corporation for the purpose of rendering the property for taxes. Such property was held by the Treasurer as trustee, and under the provisions of the law property held in this State by an agent or trustee is taxable, and the agent or trustee must render it for that purpose.

The treasurer of the State, in relation to the property in question and the duty that he owes the owner, is more than a mere naked bailee. It is true that the statute prescribes his duty with reference to the property, but it is not believed that the intention in limiting his authority over it was to affect those provisions of the law that require the agent or trustee to render the property for taxation. They can be construed together and consistently made to harmonize. He is a trustee or agent created by law and the act of the foreign corporation in placing the securities in question in his possession, and for a dereliction of duty, which is not probable, such as in the nature of a conversion of the securities, the corporation, the owner, would have a cause of action against him for their value,—not only a mere action at law, but for an accounting in equity, such as any principal might have against an agent who is charged with the possession of funds, whether such possession is obtained by contract or by express provision of law.

Guardians and administrators and other officials often come into possession of property by a mere provision of some statute that confers possession upon them. Although they occupy no contractual relation with the owner of the property creating an agency, they can be held accountable in equity to an accounting and for the proceeds in their hands.

This, in our opinion, is the status of the Treasurer in so far as his relation and duty to the corporation is concerned. He has the lawful possession of the property, and the law under which he receives it, together with the conduct of the corporation in delivering it to him, created a trust and invested him with a character of agency.

The law that requires the agent or trustee to render does not undertake to define or classify the kind of agents upon whom this duty is imposed, but the broad expression is used, "agent and trustee;" and

this, in our opinion, embraces every character of agent or trustee known and recognized by the law, that has, either by virtue of law or consent of parties, the lawful possession of the property.

On the last page of the opinion in the case of Western Assurance Co. v. Halliday, there is a strong intimation by the court that it was the duty of the party in whose possession the bonds were held, under a law similar to ours, to render the property for taxation.

The fact shown in the record that the property in question is also taxed in the State of Maryland, imposes no obstacle to its taxation in this State, if we are correct in the conclusion that its situation and situs here is of a character that gives this State jurisdiction over it for the purpose of taxation. The taxation by two independent sovereigns, where each has jurisdiction, is not double taxation within the meaning of the law. Coe v. Errol, 116 U. S., 517.

The case of Primm v. Fort, 57 S. W. Rep., 86, and Ferris v. Kimble, 75 Texas, 476, are relied upon by appellee as authority for the judgment of the trial court. Both of these cases have been explained in the case of Jesse French Piano and Organ Company v. City of Dallas, as not conflicting with the views there expressed; and we are of the opinion that there is no conflict between this case and the two cited. The facts are entirely different, and there are expressions in the case of Ferris v. Kimble which really accord with the views expressed by us, provided we are correct in the conclusion that the property in question in this case has a business situs in Travis County, where it was properly rendered for taxation.

The act of the Twenty-fifth Legislature, session laws of 1897, p. 132, authorizes a recovery of 6 per cent interest upon the taxes due and unpaid, and prescribes a penalty of 10 per cent upon the taxes due.

There being no dispute about the facts, the legal conclusions reached necessarily result in a reversal and rendition of judgment in favor of the appellant. Therefore, judgment will be rendered by this court for the amount sued for with interest on the same, together with the 10 per cent penalty due upon the unpaid taxes. This penalty to be computed upon the principal sum of the taxes due, exclusive of the interest.

*Reversed and rendered.*

Writ of error was refused by the Supreme Court, June 16, 1904.